498 S.E.2d 12

Amanda GRAYAM, Appellee

v.

DEPARTMENT OF HEALTH AND HUMAN RESOURCES, a public agency of the State of West Virginia, Appellant.

NATIONWIDE MUTUAL INSURANCE COMPANY, Appellee,

v.

James F. HATFIELD, et al., Appellees,

West Virginia Department of Health and Human Resources, Appellant.

Nos. 24036, 24129.

Supreme Court of Appeals of West Virginia.

Submitted Sept. 16, 1997.

Decided Nov. 21, 1997.

Darrell V. McGraw, Jr., Attorney General Stephen J. Small, Senior Assistant Attorney General, Barry L. Koerber, Assistant Attorney General, Charleston, for Department of Health and Human Resources, No. 24036.

Scott S. Segal, Mark R. Staun, Lori A. Simpson, Charleston, for Amanda Grayam.

H.F. Salsbery, Madonna C. Estep, Salsbery & Druckman, Charleston, for James F. Hatfield.

Darrell V. McGraw, Jr., Attorney General, Stephen J. Small, Senior Assistant Attorney General, Harold Chambers, Assistant Attorney General, Charleston, for West Virginia Department of Health and Human Resources, No. 24129.

WORKMAN, Chief Justice:

This Court consolidated these two appeals because they involve a common issue regarding the legal effect of statutory amendments made to West Virginia Code § 9–5–11. Appellant in both cases, the Department of Health and Human Resources ("Appellant"), argues that the 1993 and 1995 amendments to West Virginia Code § 9–5–11 alter the traditional meaning of the term "subrogation," as was applied by this Court in *Kittle v. Icard*, 185 W.Va. 126, 405 S.E.2d 456 (1991). To the contrary, Appellees, Amanda Grayam and James F. Hatfield, by Ricky Kennedy, his guardian and next friend (hereinafter collectively referred to as the Appellees), assert that the amendments to West Virginia Code § 9–5–11 do not abrogate the traditional meaning of subrogation and, therefore, the made-whole rule as expressed in *Kittle* continues to apply under the statute. Upon careful review of the statutory language and the arguments made by the parties on appeal, we hold that the 1993 and the 1995 amendments manifest an intent by the legislature to change the usual and ordinary meaning of subrogation and thus, the circuit courts erred by applying the made-whole rule.

## I.

### FACTUAL AND PROCEDURAL HISTORY

#### A.

##### *The Grayam Case*

On November 12, 1994, Amanda Grayam was riding as a passenger in her husband's truck when her husband failed to negotiate a curve and wrecked the truck into a tree. As a result of the accident, Ms. Grayam sustained serious injuries and spent several weeks in a hospital. Ms. Grayam's nominal medical bills for her care exceeded $72,000, of which approximately $61,000 was discharged when Medicaid paid $42,991.21 of her medical bills.[1] Ms. Grayam remained personally liable for over $11,000 in medical bills; however, Ms. Grayam's attorney was able to settle these claims for slightly over $5,000. Ms. Grayam also authorized her attorney to investigate the accident and the

---

1. The nominal amount of the medical bills represents the amount Ms. Grayam would have been responsible to pay if she was not covered by Medicaid.

potential of a product liability suit over a possible defect with the truck. The cost of this investigation exceeded $8,000. Ultimately, the suit was not pursued because no experts would testify that the alleged defect caused or contributed to the accident. The Grayam's insurance company agreed to pay them $35,000, the limit under their policy.

In February of 1996, Appellant advised Ms. Grayam of its lien of $42,991.21 for the medical benefits it paid on Ms. Grayam's behalf. In response, on April 15, 1996, Ms. Grayam filed a declaratory judgment action in the Circuit Court of Kanawha County against Appellant to determine the rights and obligations of the parties. After holding a hearing, the circuit court entered an order on October 4, 1996, finding the value of Ms. Grayam's "economic and non-economic damages far exceed the $35,000.00 in available coverage in this case." The circuit court further determined that, despite the amendments to West Virginia Code § 9–5–11, the made-whole doctrine as announced in *Kittle* still applies and, as a result, Appellant is not entitled to any reimbursement on its subrogation claim. Appellant appeals from this decision.

### B.

### *The Hatfield Case*

On February 3, 1994, Jeannie Kennedy was involved in a single-vehicle accident when the car she was driving struck a tree stump. As a result of the accident, Mrs. Kennedy, along with six children who were guest passengers in the car, suffered injuries. Mrs. Kennedy's son, six-year-old James Hatfield, was the most seriously injured. To help pay James' medical expenses, which are in excess of $19,000, Mrs. Kennedy applied for medical benefits with Appellant. Appellant contributed $6,661.59 towards James' medical costs.[2]

Unfortunately, the auto insurance policy limit was $50,000. In order to settle all claims arising out of the accident, the auto insurer, Nationwide Mutual Insurance Company ("Nationwide"), filed an original interpleader action in the Circuit Court of McDowell County, requesting the circuit court to distribute the $50,000 in proceeds among the various injured claimants. By "corrected order" entered on April 22, 1996, the circuit court disbursed the money, awarding one-half of the proceeds, $25,000, to James. In the order, the circuit court specifically found the $25,000 award to be inadequate to compensate James for his injuries.

Thereafter, Appellant sought to enforce a lien in the amount of $4,443.28 against the insurance proceeds paid to James.[3] After holding a hearing to determine if Appellant could collect this amount, the circuit court entered an order on November 19, 1996, finding "as a matter of law and of equity" that Appellant was not entitled to subrogation. The circuit court further confirmed and ratified the findings in its prior order entered on April 22, 1996, and ordered the insurance proceeds to be distributed as previously directed by the court. Appellant maintains it has a right to subrogation and appeals the circuit court's decision.

### II.

### DISCUSSION

### A.

### *Standard of Review*

 In both the *Grayam* and *Hatfield* cases, Appellant disputes the legal and factual determinations made by the circuit courts. As previously mentioned, the *Grayam* case was brought as a declaratory judgment action. This Court has recognized that the purpose of bringing a declaratory judgment action

"is to avoid the expense and delay which might otherwise result, and in securing in advance *a determination of legal questions* which, if pursued, can be given the force

---

**2.** According to the brief submitted on behalf of James, an additional $4,000 was paid under the medical payment provision of his mother's auto insurance policy.

**3.** This amount was reached by subtracting Appellant's prorated share of James' attorney's fees, which totaled $2,218.31, from the $6,661.59 Appellant paid on behalf of James for his medical care.

and effect of a judgment or decree without the long and tedious delay which might accompany other types of litigation."

*Harrison v. Town of Eleanor,* 191 W.Va. 611, 615, 447 S.E.2d 546, 550 (1994) (quoting *Crank v. McLaughlin,* 125 W.Va. 126, 133, 23 S.E.2d 56, 60 (1942).) Given that the underlying purpose of a declaratory judgment action is to resolve legal issues, we concluded in syllabus point three of *Cox v. Amick,* 195 W.Va. 608, 466 S.E.2d 459 (1995), that "[a] circuit court's entry of a declaratory judgment action is reviewed *de novo.*" *Id.* at 610, 466 S.E.2d at 461. However, we also stated in *Cox* that this Court will apply the clearly erroneous standard when reviewing any factual findings made by the circuit court in reaching its ultimate resolution of a declaratory judgment action. *Id.* at 612, 466 S.E.2d at 463. Although the Hatfield case was filed by Nationwide as an interpleader action,[4] the judgment in that case was a final order as to all the parties and, thus, we likewise review the circuit court's resolution of questions of law de novo and review the circuit court's findings of fact under the clearly erroneous standard.

## B.

### Analysis

To understand the parties' dispute with regard to the 1993 and 1995 amendments to West Virginia Code § 9–5–11, it is necessary to first examine the original version of that statute and this Court's interpretation of that statute in *Kittle.* In *Kittle,* the Department of Human Services (DHS)[5] paid approximately $10,000 in medical expenses for a child who received serious injuries when he was struck by an automobile. 185 W.Va. at 128, 405 S.E.2d at 458.[6] The driver of the automobile was found to be judgment proof, and the driver's automobile insurer offered to

settle the claim for $100,000, the full amount of available liability coverage. *Id.* DHS sought to recover the $10,000 it paid in medical expenses from the insurance proceeds. However, the guardian ad litem testified that the claim's actual value was between $200,000 and $250,000. Therefore, the child's mother filed an action,[7] requesting that the circuit court approve the settlement, find the child was not made whole by the settlement, and, as a result, declare that DHS was not entitled to subrogation. *Id.*[8] In its order and memorandum opinion, the circuit court granted the mother's requests for relief and prohibited DHS from collecting any of the medical expenses it paid on behalf of the child. DHS appealed this decision. *Id.* at 128–29, 405 S.E.2d at 459.

On appeal, DHS argued, inter alia, that it was "directly and exclusively" entitled to subrogation pursuant to West Virginia Code § 9–5–11 (1990) and that the circuit court erred by applying the made-whole rule. *Id.* at 129–30, 405 S.E.2d at 460. This Court began its analysis in *Kittle* by recognizing that the Medicaid program is a joint endeavor between federal and state governments. In order to receive federal assistance, states are required pursuant to 42 U.S.C. § 1396a(a)(25) to seek reimbursement from legally-liable third parties in appropriate circumstances. In *Kittle,* we recognized that 42 U.S.C. § 1396a(a)(25), in relevant part, provided that a state's medical assistance plan must:

> (25) provide (A) that the State or local agency administering such plan will take all reasonable measures to ascertain the legal liability of third parties to pay for care and services (available under the plan) arising out of injury, disease, or disability, (B) that where the State or local agency knows that a third party has such a

---

4. *See* W. Va.R.Civ.P. 22; W. Va.Code § 56–10–1 (1997).

5. The Executive Reorganization Act of 1989 redesignated the Department of Human Services as the Division of Human Services under the Department of Health and Human Resources. *See* W. Va.Code § 5F–1–1 (1993); W. Va.Code § 5F–2–1(d)(2) (1993 & Supp.); W. Va.Code § 9–2–1a (1990).

6. The child's total medical bill was $27,317.41.

7. The child's mother filed a petition for infant settlement and declaratory judgment and a petition for a writ of mandamus.

8. The child's mother also requested that DHS be ordered to pay all outstanding and future medical expenses.

legal liability such agency will treat such legal liability as a resource of the individual on whose behalf the care and services are made available for purposes of paragraph (17)(B), and (C) that in any case where such a legal liability is found to exist after medical assistance has been made available on behalf of the individual and where the amount of reimbursement the State can reasonably expect to recover exceeds the cost of such recovery, the State or local agency *will seek reimbursement* for such assistance to the extent of such legal liability[.]

185 W.Va. at 129, 405 S.E.2d at 459 (quoting 42 U.S.C. § 1396a(a)(25)).

In comparing the federal statute to West Virginia Code § 9–5–11(a) (1990), this Court found the federal and state requirements consistent with one another. 185 W.Va. at 129, 405 S.E.2d at 460. The relevant portion of West Virginia Code § 9–5–11 states:

> (a) If medical assistance is paid on behalf of a recipient of medical assistance because of any sickness, injury, disease or disability, and another person is legally liable for such expense, the department [division] may recover reimbursement for such medical assistance from such other person, or from the recipient of such assistance if he has been reimbursed by the other person. *The department shall be legally subrogated to the rights of the recipient against the person so liable,* but only to the extent of the reasonable value of the medical assistance paid and attributable to such sickness, injury, disease or disability; and the commissioner may compromise, settle and execute a release of any such claim.

W. Va.Code § 9–5–11(a) (1990) (emphasis added). Although in *Kittle* we agreed with DHS that, pursuant to the federal and state statutes, "DHS is legally subrogated to any right … [a medical assistance recipient] may have to recover against the legally liable party[,]" the question remained with regard to how the doctrine of subrogation should be

applied under the statute. 185 W.Va. at 130, 405 S.E.2d at 460.

■ In resolving this issue, this Court held in *Kittle* that the usual and ordinary definition of subrogation should be applied unless the legislature clearly expresses an intent within the statute to give subrogation a different meaning. *Id.*[9] Given its usual and ordinary meaning, the doctrine of subrogation provides an equitable remedy to " 'one secondarily liable who has paid the debt of another and to whom in equity and good conscience should be assigned the rights and remedies of the original creditor.' " *Id.* (quoting *State Farm Mut. Auto. Ins. Co. v. Foundation Reserve Ins. Co.,* 78 N.M. 359, 363, 431 P.2d 737, 741 (1967)). In other words, as stated in syllabus point four of *Ray v. Donohew,* 177 W.Va. 441, 352 S.E.2d 729 (1986): " 'The doctrine of subrogation is that one who has the right to pay, and does pay, a debt which ought to have been paid by another is entitled to exercise all the remedies which the creditor possessed against that other.' Syl. Pt. 1, *Bassett v. Streight,* 78 W.Va. 262, 88 S.E. 848 (1916)." 177 W.Va. at 443, 352 S.E.2d at 731, Syl. Pt. 4, *Ray; see also Travelers Indem. Co. v. Rader,* 152 W.Va. 699, 703, 166 S.E.2d 157, 160 (1969) (" 'subrogation is an equitable right which arises out of the facts and which entitles the subrogee to collect that which he has advanced' ") (quoting *Busch v. Home Ins. Co.,* 97 N.J.Super. 54, 56, 234 A.2d 250, 251 (1967)).

■ Finding no intent by the legislature that the usual and ordinary definition of subrogation should not apply, and in light of the equitable principles underlying the doctrine of subrogation, we held in *Kittle* that the right to subrogation may be limited by the made-whole rule. 185 W.Va. at 133–34, 405 S.E.2d at 463–64. The made-whole rule has been interpreted in insurance cases to mean that "[u]nder general principles of equity, in the absence of statutory law or valid contractual obligations to the contrary, an insured

---

**9.** *See White v. Sutherland,* 92 N.M. 187, 190, 585 P.2d 331, 334 (1978) (citing *Tafoya v. New Mexico State Police Bd.,* 81 N.M. 710, 472 P.2d 973 (1970)); *see also U.S. v. Greene,* 266 F.Supp. 976, 979 (N.D.Ill.1967) (stating that " '[s]ubrogation'

is a term of legal art which we assume would not be employed by the drafters of the statute unless they intended it to be construed in its normal sense").

must be fully compensated for injuries or losses sustained (made whole) before the subrogation rights of an insurance carrier arise." *Wine v. Globe American Casualty Co.*, 917 S.W.2d 558, 562 (Ky.1996).[10] "The equitable principle underlying the made-whole rule in insurance subrogation cases is that the burden of loss should rest on the party paid to assume the risk (the insurer) and not on the party least able to shoulder the loss (the inadequately compensated insured)." *Porter v. McPherson*, 198 W.Va. 158, 163, 479 S.E.2d 668, 673 (1996) (citing *Wine*, 917 S.W.2d at 562).

DHS maintained in *Kittle* that the made-whole rule did not apply to its right to reimbursement under West Virginia Code § 9–5–11 (1990) because the statute abrogated the usual and ordinary meaning of subrogation. In support of its position, DHS relied, inter alia, upon *Waukesha County v. Johnson*, 107 Wis.2d 155, 320 N.W.2d 1 (1982). In *Waukesha County*, the Wisconsin Supreme Court determined that normal subrogation principles and the made-whole rule were rendered inapplicable under a Wisconsin statute. The statute at issue in *Waukesha County* clearly prioritized the right of a county to be reimbursed for the medical assistance it provided

a public assistance recipient with respect to actions taken and recoveries obtained from liable third parties. *Id.* at 161, 320 N.W.2d at 4.[11]

To the contrary, however, we found no such prioritization in West Virginia Code § 9–5–11 (1990). 185 W.Va. at 132, 405 S.E.2d at 462. Moreover, we also found nothing in West Virginia Code § 9–5–11 (1990) to indicate that the normal principles of subrogation should not apply. 185 W.Va. at 132, 405 S.E.2d at 462. In fact, we determined that our statute is more closely related "to those statutes ... wherein state courts noted the legislature's use of the concept of subrogation and held that because the legislature had not provided that normal subrogation principles should not be applied, the court would apply those equitable principles." *Id.* (citing *Coplien v. Department of Health & Social Serv.*, 119 Wis.2d 52, 56, 349 N.W.2d 92, 94 (App.1984)). As a result, we concluded in *Kittle* that the usual and ordinary principles of subrogation must apply and, thus, that the lower court did not err by denying DHS's request for reimbursement upon finding the injured child was not made whole by the settlement proceeds. *Id.* at 134, 405 S.E.2d at 464.

---

**10.** *See also Hill v. State Farm Mut. Auto. Ins. Co.*, 765 P.2d 864, 868 (Utah 1988) (stating that "[w]here the insured settles with the tortfeasor, the settlement amount goes to the insured unless the insurer can prove that the insured has already received full compensation"); 16 George J. Couch, *Couch on Insurance 2d* § 61:64 at 145–46 (Ronald A. Anderson & Mark S. Rhodes eds., rev. ed.1983) (providing that "in absence of waiver to the contrary; ... no right of subrogation against the insured exists upon the part of the insurer where the insured's actual loss exceeds the amount recovered from both the insurer and the wrongdoer, after deducting costs and expenses") (footnote omitted).

**11.** As quoted in *Waukesha*, the statute at issue provided, in relevant part:

Third party liability. (1) Subrogation. The department, county or municipality providing any public assistance authorized under this chapter, including medical assistance, as a result of the occurrence of an injury, sickness or death which results in a possible recovery or indemnity from a 3rd party, including an insurer, may make a claim or maintain an action in tort against the 3rd party.

(2) Assignment of actions. The department, county or municipality providing any public

assistance authorized under this chapter, including medical assistance, as a result of the occurrence of injury, sickness or death which results in a possible recovery of indemnity from a 3rd party, including an insurer, may require an assignment from the applicant or recipient of such public assistance or legally appointed representative of the incompetent or deceased applicant or recipient giving it the right to make a claim against the 3rd party.

(3) Control of action. The applicant or recipient or any party having a right under this section may make a claim against the 3rd party or may commence an action and shall join the other party as provided under s. 803.03(2). Each shall have an equal voice in the prosecution of such claim or action.

(4) Recovery; how computed. Reasonable costs of collection including attorney's fees shall be deducted first. The amount of assistance granted as result of the occurrence of the injury, sickness or death shall be deducted next and the remainder shall be paid to the public assistance recipient. The amount of the medical assistance funds recovered shall be subject to fees and proration as set forth in sub. (6).
107 Wis.2d at 157–58, 320 N.W.2d at 2 n. 1 (quoting Wis. Stat. § 49.65 (1977)).

■ Approximately two years after the *Kittle* decision, the West Virginia Legislature substantially amended West Virginia Code § 9–5–11. As part of the amendment, the legislature reworded portions of the original language.[12] For instance, the origi-

12. In full, the 1993 version of West Virginia Code § 9–5–11 provides:

Right of subrogation by department of health and human resources to the rights of recipients of medical assistance; rules as to effect of subrogation.

(a) If medical assistance is paid or will be paid to a provider of medical care on behalf of a recipient of medical assistance because of any sickness, injury, disease or disability, and another person is legally liable for such expense, either pursuant to contract, negligence or otherwise, the department of health and human resources shall have a right to recover full reimbursement from any award or settlement for such medical assistance from such other person, or from the recipient of such assistance if he has been reimbursed by the other person. The department shall be legally subrogated to the rights of the recipient against the person so liable, but only to the extent of the reasonable value of the medical assistance paid and attributable to the sickness, injury, disease or disability for which the recipient has received damages. When an action or claim is brought by a medical assistance recipient or by someone on his or her behalf against a third party who may be liable for the injury, disease, disability or death of a medical assistance recipient, any settlement, judgment or award obtained is subject to the claim of the department of health and human resources for reimbursement of an amount sufficient to reimburse the department the full amount of benefits paid on behalf of the recipient under the medical assistance program for the injury, disease, disability or death of the medical assistance recipient. The subrogation claim of the department of health and human resources shall not exceed the amount of medical expenses for the injury, disease, disability or death of the recipient paid by the department on behalf of the recipient. The right of subrogation created in this section includes all portions of the cause of action, by either settlement, compromise, judgment or award, notwithstanding any settlement allocation or apportionment that purports to dispose of portions of the cause of action not subject to subrogation. Any settlement, compromise, judgment or award that excludes or limits the cost of medical services or care shall not preclude the department of health and human resources from enforcing its rights under this section. The secretary may compromise, settle and execute a release of any such claim in whole or in part.

(b) Nothing in this section shall be construed so as to prevent the recipient of medical assistance from maintaining an action for injuries received by him against any other person and from including therein, as part of the compensatory damages sought to be recov-

ered, the amount or amounts of his medical expenses, even though such person received medical assistance in the payment of such medical expenses, in whole or in part.

If the action be tried by a jury, the jury shall not be informed as to the interest of the department of health and human resources, if any, and such fact shall not be disclosed to the jury at any time. The trial judge shall, upon the entry of judgment on the verdict, direct that an amount equal to the amount of medical assistance given be withheld and paid over to the department of health and human resources. Irrespective of whether the case be terminated by judgment or by settlement without trial, from the amount required to be paid to the department of health and human resources there shall be deducted the attorney fees attributable to such amount in accordance with and in proportion to the fee arrangement made between the recipient and his attorney of record so that the department shall bear the pro rata portion of such attorney fees. Nothing in this section shall preclude any person who has received medical assistance from settling any cause of action which he may have against another person and delivering to the department of health and human resources, from the proceeds of such settlement, the sums received by him from the department or paid by the department for his medical assistance. Any release given by a person who has received medical assistance to another person releasing such other person of liability with respect to any cause of action shall be binding upon the department of health and human resources if the person for whose benefit the release inures is unaware of, or has not been informed of, the interest of the department therein. If such other person is aware of or has been informed of the interest of the department of health and human resources in the matter, it shall be the duty of the person to whose benefit the release inures to withhold so much of the settlement as may be necessary to reimburse the department to the extent of its interest in the settlement. No judgment, award of or settlement in any action or claim by a medical assistance recipient to recover damages for injuries, disease or disability, in which the department of health and human resources has interest, shall be satisfied without first giving the department notice and reasonable opportunity to establish its interest. If, after being notified in writing of a subrogation claim and possible liability of the recipient, guardian, attorney or personal representative for failure to subrogate the department, a recipient, his or her guardian, attorney or personal representative disposes of the funds representing the judgment, settlement or award, without the written approval of the department, that person shall be liable to

nal language provides that Appellant "may recover reimbursement...." W. Va.Code § 9–5–11(a) (1990). This language, however, was changed in 1993 to state that Appellant "*shall* have a right to recover *full reimbursement* from any award or settlement" for medical assistance provided by Appellant. W. Va.Code § 9–5–11(a) (Supp.1993) (emphasis added). Unlike its earlier counterpart, the 1993 version of the statute also contains entirely new language making "any settlement, judgment or award obtained ... subject to the claim of ... [Appellant] for reimbursement of an amount sufficient to reimburse ... [Appellant] the *full amount of benefits* paid on behalf of the recipient...." *Id.* (emphasis added). In addition, the 1993 statute provides that "[a]ny settlement, compromise, judgment or award that excludes or limits the cost of medical services or care *shall not preclude* ... [Appellant] from enforcing its rights under this section." *Id.* (emphasis added). Appellant maintains that these changes to the statute clearly express the legislature's intent to abolish the made-whole rule and grant Appellant a priority right in receiving reimbursement from legally liable third parties. Upon review of these revisions, we agree with Appellant.

The above-quoted language from the 1993 amendment clearly and unambiguously mandates that Appellant "shall have a right to

recover *full reimbursement*" without regard to "[a]ny settlement, compromise, judgment or award that excludes or limits the cost of medical services or care...." *Id.* (emphasis added). The statute further provides that the "[t]he right of subrogation created in this section includes all portions of the cause of action ... notwithstanding any settlement allocation or apportionment" and that Appellant is entitled to "the full amount of benefits paid" from "any settlement, judgment or award obtained...." *Id.* (emphasis added). In light of *Kittle* and the remaining portion of West Virginia Code § 9–5–11 (Supp.1993), this language, without doubt, gives Appellant a superior right to be *fully* reimbursed from any settlement, compromise, judgment or award obtained from a liable third party. Unlike the original version of the statute, the legislature obviously took action after the *Kittle* decision to amend the statute and altered the usual and ordinary definition of subrogation to give Appellant a priority right to receive reimbursement from any monies obtained from a liable third party. The plain meaning to be drawn from these changes is that, irrespective of the made-whole rule, Appellant shall have a right to full reimbursement.

With respect to the 1995 amendment, we reach a similar conclusion as we do with the 1993 amendment.[13] The language quoted

the department for any amount that, as a result of the disposition of the funds, is not recoverable by the department. In the event that a controversy arises concerning the subrogation claims by the department, an attorney shall interplead, pursuant to rule twenty-two of the rules of civil procedure, the portion of the recipient's settlement that will satisfy the department exclusive of attorneys fees and costs regardless of any contractual arrangement between the client and the attorney.

W. Va.Code § 9–5–11 (Supp.1993).

**13.** The 1995 version of West Virginia Code § 9–5–11 states, in full:

**Assignment of rights; right of subrogation by department of health and human resources to the rights of recipients of medical assistance; rules as to effect of subrogation.**

(a) Submission of an application to the department of health and human resources for medical assistance is, as a matter of law, an assignment of the right of the applicant or legal representative thereof, to recovery from personal insurance or other sources, including, but not limited to, liable third parties, to the

extent of the cost of medical services paid for by the medicaid program. This assignment of rights does not extend to medicare benefits.

At the time the application is made, the department shall include a statement along with such application that explains that the applicant has assigned all such rights and the legal implications of making such assignment as provided in this section.

If medical assistance is paid or will be paid to a provider of medical care on behalf of a recipient of medical assistance because of any sickness, injury, disease or disability, and another person is legally liable for such expense, either pursuant to contract, negligence or otherwise, the department of health and human resources shall have a right to recover full reimbursement from any award or settlement for such medical assistance from such other person, or from the recipient of such assistance if he has been reimbursed by the other person. The department shall be legally assigned the rights of the recipient against the person so liable, but only to the extent of the reasonable value of the medical assistance

above abrogating the usual and ordinary def-

paid and attributable to the sickness, injury, disease or disability for which the recipient has received damages. When an action or claim is brought by a medical assistance recipient or by someone on his or her behalf against a third party who may be liable for the injury, disease, disability or death of a medical assistance recipient, any settlement, judgment or award obtained is subject to the claim of the department of health and human resources for reimbursement of an amount sufficient to reimburse the department the full amount of benefits paid on behalf of the recipient under the medical assistance program for the injury, disease, disability or death of the medical assistance recipient. The claim of the department of health and human resources assigned by such recipient shall not exceed the amount of medical expenses for the injury, disease, disability or death of the recipient paid by the department on behalf of the recipient. The right of subrogation created in this section includes all portions of the cause of action, by either settlement, compromise, judgment or award, notwithstanding any settlement allocation or apportionment that purports to dispose of portions of the cause of action not subject to the subrogation. Any settlement, compromise, judgment or award that excludes or limits the cost of medical services or care shall not preclude the department of health and human resources from enforcing its rights under this section. The secretary may compromise, settle and execute a release of any such claim in whole or in part.

(b) Nothing in this section shall be construed so as to prevent the recipient of medical assistance from maintaining an action for injuries received by him against any other person and from including therein, as part of the compensatory damages sought to be recovered, the amount or amounts of his or her medical expenses, even though such person received medical assistance in the payment of such medical expenses, in whole or in part.

If the action be tried by a jury, the jury shall not be informed as to the interest of the department of health and human resources, if any, and such fact shall not be disclosed to the jury at any time. The trial judge shall, upon the entry of judgment on the verdict, direct that an amount equal to the amount of medical assistance given be withheld and paid over to the department of health and human resources. Irrespective of whether the case be terminated by judgment or by settlement without trial, from the amount required to be paid to the department of health and human resources there shall be deducted the attorney fees attributable to such amount in accordance with and in proportion to the fee arrangement made between the recipient and his or her attorney of record so that the department shall bear the pro rata portion of such attorney fees. Nothing in this section shall preclude any person who has received medical assistance from set-

tling any cause of action which he may have against another person and delivering to the department of health and human resources, from the proceeds of such settlement, the sums received by him or her from the department or paid by the department for his or her medical assistance. If such other person is aware of or has been informed of the interest of the department of health and human resources in the matter, it shall be the duty of the person to whose benefit the release inures to withhold so much of the settlement as may be necessary to reimburse the department to the extent of its interest in the settlement. No judgment, award of or settlement in any action or claim by a medical assistance recipient to recover damages for injuries, disease or disability, in which the department of health and human resources has interest, shall be satisfied without first giving the department notice and reasonable opportunity to establish its interest. The department shall have sixty days from receipt of such written notice to advise the recipient or his or her representative in writing of the department's desire to establish its interest through the assignment. If no such written intent is received within the sixty-day period, then the recipient may proceed and in the event of full recovery forward to the department the portion of the recovery proceeds less the department's share of attorney's fees and costs expended in the matter. In the event of less than full recovery the recipient and the department shall agree as to the amount to be paid to the department for its claim. If there is no recovery, the department shall under no circumstances be liable for any costs or attorneys fees expended in the matter. If, after being notified in writing of a subrogation claim and possible liability of the recipient, guardian, attorney or personal representative for failure to subrogate the department, a recipient, his or her guardian, attorney or personal representative disposes of the funds representing the judgment, settlement or award, without the written approval of the department, that person shall be liable to the department for any amount that, as a result of the disposition of the funds, is not recoverable by the department. In the event that a controversy arises concerning the subrogation claims by the department, an attorney shall interplead, pursuant to rule twenty-two of the rules of civil procedure, the portion of the recipient's settlement that will satisfy the department exclusive of attorneys fees and costs regardless of any contractual arrangement between the client and the attorney.

(c) Nothing contained herein shall authorize the department of health and human resources to institute a class action or multiple plaintiff action against any manufacturer, distributor or vendor of any product to recover medical care expenditures paid for by the medicaid program.

W. Va.Code § 9–5–11 (Supp.1995).

inition of subrogation in the 1993 version was carried over verbatim in the 1995 version of the statute. *Cf.* W. Va.Code § 9–5–11 (Supp. 1993) to W. Va.Code § 9–5–11 (1995). Although there were some significant changes made to the statute in 1995, none of those changes reinstate implementation of the made-whole rule.[14]

■ On the other hand, Appellees assert that none of the changes in the statute evidence any intent on the part of the legislature to prioritize the rights of Appellant over those of the medical recipient. Indeed, Ms. Grayam argues that the statutory changes codify this Court's decision in *Kittle.* Specifically, Ms. Grayam points to language contained within both the 1993 and 1995 versions of West Virginia Code § 9–5–11(a), stating that "[t]he ·secretary [of the department of health and human resources] may compromise, settle and execute a release of any such claim in whole or in part." W. Va.Code § 9–5–11(a) (Supp.1993 & Supp.1995). Ms. Grayam argues that this language evidences "the legislature's intent to avoid inequitable results where an injured party is not 'made-whole.'" However, we find Ms. Grayam's interpretation of this language extends be-

yond what is provided therein. It is well established that "[w]here the language of a statute is clear and without ambiguity, the plain meaning is to be accepted without resorting to the rules of interpretation." Syl. Pt. 2, *State ex rel. Underwood v. Silverstein,* 167 W.Va. 121, 278 S.E.2d 886 (1981) (quoting Syl. Pt. 2, *State v. Elder,* 152 W.Va. 571, 165 S.E.2d 108 (1968)). The language quoted by Ms. Grayam does nothing more than give Appellant sole discretion to "compromise, settle and execute a release of any … claim…." *Id.* Moreover, this language says nothing about the made-whole rule and does not alter the priority status given to Appellant elsewhere in the 1993 amendment.[15]

Indeed, upon reviewing the statutory language in its entirety, this Court finds that in both the 1993 and 1995 amendments to West Virginia Code § 9–5–11, the legislature rendered the made-whole rule inapplicable by clearly and unambiguously modifying the usual and ordinary meaning of subrogation as it is used in that statute.[16] Pursuant to these amendments, if another person is legally liable to pay for medical assistance provided by Appellant, Appellant possesses a priority right to recover full reimbursement from any settlement, compromise, judgment, or award obtained from such other person or from the recipient of such assistance if he or

14. This Court is cognizant of the fact that the legislature expressly gives Appellant a right of assignment in the 1995 statute. Appellant maintains its statutory right to assignment clearly demonstrates the legislature's decision to overrule *Kittle.* On the other hand, James argues the legislature did not intend to give Appellant an actual right to assignment because assignments of tort claims are against public policy. *See generally* Syllabus, *Travelers Indemnity Co. v. Rader,* 152 W.Va. 699, 166 S.E.2d 157 (1969) (stating that "[a] provision in an insurance policy providing for subrogation of the insurer to the rights of the insured to the extent that medical payments are advanced to such insured by the insurer is distinct from an assignment of a tort claim and is not invalid as against the public policy of this State"). As this Court finds sufficient support in the statute to demonstrate that the legislature otherwise abrogated the usual and ordinary definition of subrogation, rendering the made-whole rule inapplicable, we need not determine what power, if any, the express right of assignment provides Appellant beyond what previously existed under the statute.

 In addition, it is insignificant that the manner in which the legislature chose to abrogate the usual and ordinary meaning of subrogation in the amendments to West Virginia Code § 9–5–11 is arguably different than the prioritization found

by the Wisconsin court in *Waukesha County, see supra* note 11, or the prioritization more recently found by this Court in *Bush v. Richardson,* 199 W.Va. 374, 484 S.E.2d 490 (1997), regarding subrogation under a West Virginia's workers' compensation statute, West Virginia Code § 23–2A–1 (1990). The legislature was in no way constrained to follow the Wisconsin statute nor constrained to follow the workers' compensation statute at issue in *Bush. See Robinson v. Charleston Area Med. Center, Inc.,* 186 W.Va. 720, 725, 414 S.E.2d 877, 882 (1991) (providing that "the powers of the legislature are almost plenary" and the legislature has the power to enact any statute which is not constitutionally prohibited).

15. This language also can be found in the original version of the statute, with the only change being a substitution of the word "secretary" for the word "commissioner." *Cf.* W. Va.Code § 9–5–11 (1990 & Supp.1993).

16. Although the parties argue over what triggering event gives rise to Appellant's right of reimbursement, this Court finds it is unnecessary to resolve this issue in the present cases because the made-whole rule was abrogated under both amended versions of West Virginia Code § 9–5–11.

she has been reimbursed by the other person. Although it is unfortunate that there are inadequate insurance proceeds to fully compensate Appellees for the losses they suffered in these cases, this Court must follow the legislative mandates set forth in the statute and reverse the lower courts' decisions applying the made-whole rule to the facts of these cases.[17]

### III.

### CONCLUSION

For the foregoing reasons, this Court reverses the final orders of the Circuit Courts of Kanawha and McDowell Counties and remands these cases for a determination of the amount due Appellant.[18]

Reversed and remanded.

---

**17.** This Court finds absolutely no merit to James' contention that because his mother completed the application for benefits for him, his mother is not a liable "third" party under the statute. Mrs. Kennedy indubitably qualifies as "another person" who is legally liable for the expenses paid by Appellant on behalf of James. W. Va.Code § 9–5–11 (Supp.1993 & Supp.1995).

**18.** In making these determinations, West Virginia Code § 9–5–11(b) (Supp.1993 & Supp.1995) requires the circuit courts to deduct Appellant's pro rata share of the attorneys' fees. Specifically, West Virginia Code § 9–5–11(b) (Supp.1993) provides, in part, that

> from the amount required to be paid to ... [Appellant] there shall be deducted the attorney fees attributable to such amount in accordance with and in proportion to the fee arrangement made between the recipient and his attorney of record so that ... [Appellant] shall bear the pro rata portion of such attorney fees.