557 S.E.2d 277

KANAWHA VALLEY RADIOLOGISTS, INC., a West Virginia Professional Corporation, Plaintiff Below, Appellee,

v.

ONE VALLEY BANK, N.A., a National Banking Association, Defendant Below,

CNA Insurance Companies, Including Valley Forge Insurance Company, Intervenor Below, Appellant.

Nos. 29689, 29690.

Supreme Court of Appeals of West Virginia.

Submitted Nov. 6, 2001.

Decided Nov. 28, 2001.

Paul A. Burns, Martin & Seibert, L.C., Martinsburg, West Virginia, Attorney for the Appellant.

Robert B. Allen, Pamela C. Deem, Charles W. Pace, Jr., Allen, Guthrie & McHugh, Charleston, West Virginia, Attorney for the Appellee.

DAVIS, Justice:

In this appeal by CNA Insurance Companies, we are asked to determine whether the circuit court erred in deciding that, pursuant to the made-whole doctrine, CNA was barred from exercising its subrogation rights with respect to monies recovered by its insured, Kanawha Valley Radiologists, in connection with embezzlement losses suffered by Kanawha Valley Radiologists. In addition, we are asked to consider whether the circuit court erred in awarding attorney's fees to Kanawha Valley Radiologists without affording CNA an opportunity to dispute the award. We conclude that CNA's insurance policy issued to Kanawha Valley Radiologists embraces the made-whole doctrine. Consequently, CNA was correctly prohibited from exercising its subrogation rights where Kanawha Valley Radiologists had not been made whole. With regard to the circuit court's award of attorney fees, we find that

the circuit court erred in failing to conduct a hearing prior to making its award.

## I.

### FACTUAL AND PROCEDURAL HISTORY

The facts underlying the case *sub judice* have been stipulated to by the parties and are not in dispute. On March 16, 1999, Kanawha Valley Radiologists, Inc. (hereinafter KVR), learned that one of its employees, Patricia Payne Griffith, had been diverting company funds into her own personal bank account.[1] A subsequent investigation revealed that, from about December 1989 until March 1999, Ms. Griffith had embezzled approximately $2,300,000.00.

On or about March 1, 1998, KVR had renewed its Business Account Package Policy with CNA Insurance Companies (hereinafter CNA). The renewed policy provided $50,000 in coverage for "Employee Dishonesty." The coverage period for this policy was March 1, 1998, through March 1, 2001. KVR's investigation into Ms. Griffith's illegal activities revealed that $268,633.36 of the embezzled funds had been diverted during the policy period. After KVR's submission to CNA of a "Proof of Loss," CNA paid to KVR the policy coverage limit of $50,000.

Thereafter, KVR, without assistance from CNA, began liquidating the assets of Ms. Griffith and others, and also initiated two separate civil actions in the Circuit Court of Kanawha County in an effort to recover its stolen funds. One of these two civil actions, a suit for conversion of funds brought against One Valley Bank (hereinafter "One Valley"), is the case underlying the instant appeal.[2] KVR ultimately settled its claim against One Valley for $750,000. In all, KVR has recovered a gross sum of $1,381,309.25 from Ms. Griffith, One Valley, CNA, and others.

Shortly before the settlement was reached between KVR and One Valley, CNA filed a "Motion to Intervene for Limited Purpose," asserting a claim for recovery of the $50,000 it had paid to KVR pursuant to the "Employee Dishonesty" provision of KVR's policy. After granting CNA's motion to intervene, the circuit court conducted a hearing on CNA's claims on October 17, 2000. At that hearing, the parties presented the court with their joint stipulation as to all the relevant facts, and proceeded to argue their respective positions as to the law. At this stage of the proceedings, CNA asserted as its sole basis of recovery a provision in the policy designated "Condition J.2." At the conclusion of the hearing, the circuit court requested that the parties submit proposed findings of fact and conclusions of law in support of their respective positions. Such findings and conclusions were submitted to the court by both parties on November 17, 2000. By subsequent correspondence, dated November 22, 2000, CNA conceded that, as stated in KVR's proposed findings and conclusions, the policy provision upon which it had theretofore relied, "Condition J.2," had been deleted from the policy and replaced by Section V.H.11 of the Umbrella Coverage Endorsement of the policy. Nevertheless, CNA asserted that it was entitled to recover its $50,000 under the subrogation clause of KVR's policy, properly designated as Section V.H.11.

On November 27, 2000, the circuit court entered its "Final Order Including Findings of Fact and Conclusion of Law," in which it adopted KVR's proposed findings and conclusions and denied CNA's subrogation claim based upon its ruling that the claim was barred by the made-whole doctrine. Thereafter, KVR filed a "Motion for Release of Escrow Funds and Attorneys' Fees and Expenses," wherein it requested, *inter alia,* that it be awarded its attorney's fees and expenses incurred in defending against CNA's subrogation claim. KVR attached to its motion an original statement from its lawyers outlining, without descriptive detail, the legal fees and expenses therein claimed, which amounted to $21,922.77. In addition, the motion was accompanied by a notice stating that the motion would be brought on for hearing on February 14, 2001. Nevertheless,

---

1. Both KVR and Ms. Griffith had accounts at One Valley Bank.

2. The other civil action was brought against Ms. Griffith and resulted in a judgment against her in the amount of $3,009,017.27.

the circuit court, *sua sponte* and without conducting a hearing, entered an order dated January 16, 2001, granting KVR the relief sought in its "Motion for Release of Escrow Funds and Attorneys' Fees and Expenses."

On January 18, 2001, CNA filed in the circuit court its petition seeking this Court's review of the circuit court's order denying CNA's subrogation claim. CNA then filed, on February 1, 2001, a "Motion to Vacate Judgment Pursuant to Rule 60" asking the circuit court to vacate that portion of its order granting attorney's fees and expenses to KVR. On February 14, 2001, the circuit court conducted a hearing on CNA's motion to vacate and, at the conclusion of the hearing, entered an order staying the enforcement of that order insofar as it related to attorney's fees and expenses, pending this Court's resolution of CNA's appeal of the underlying subrogation claim.

On March 15, 2001, CNA filed a second petition for appeal, this time seeking review of the circuit court's order granting attorney's fees and expenses. By two separate orders entered on May 23, 2001, this Court granted both of CNA's petitions for appeal and consolidated the same.

## II.

### STANDARD OF REVIEW

On appeal, we are asked to review the circuit court's ultimate determination on the merits of this case. We have held generally that

"[i]n reviewing challenges to the findings and conclusions of the circuit court, we apply a two-prong deferential standard of review. We review the final order and the ultimate disposition under an abuse of discretion standard, and we review the circuit court's underlying factual findings under a clearly erroneous standard. Questions of law are subject to a *de novo* review." Syllabus point 2, *Walker v. West Virginia Ethics Commission*, 201 W.Va. 108, 492 S.E.2d 167 (1997).

Syl. pt. 1, *Coordinating Council for Indep. Living, Inc. v. Palmer*, 209 W.Va. 274, 546 S.E.2d 454 (2001). In addition, CNA challenges the circuit court's award of attorney fees. In this regard, we have held:

" '[T]he trial [court] ... is vested with a wide discretion in determining the amount of ... court costs and counsel fees, and the trial [court's] ... determination of such matters will not be disturbed upon appeal to this Court unless it clearly appears that [it] has abused [its] discretion.' Syllabus point 3, *Bond v. Bond*, 144 W.Va. 478, 109 S.E.2d 16 (1959)." Syl. Pt. 2, *Cummings v. Cummings*, 170 W.Va. 712, 296 S.E.2d 542 (1982).

Syl. pt. 4, in part, *Ball v. Wills*, 190 W.Va. 517, 438 S.E.2d 860 (1993). Having reviewed the proper standards for our consideration of this case, we proceed to address the issues raised.

## III.

### DISCUSSION

#### A. Subrogation

In the instant case, we are asked to determine the extent to which the made-whole doctrine applies to an insurance policy when there is subrogation language contained in the policy directing how recovered funds are to be distributed.

The provision of the CNA insurance policy at issue states the following:

11. Subrogation

In the case of any payments by us under the coverages of this endorsement, we shall be subrogated to all rights of recovery against any other party which you may have and will cooperate with you and all other interests. Amounts recovered shall be apportioned in the following order:

a. Amounts paid in excess of the payments under this policy shall first be reimbursed up to the amount paid by those, including you, who made such payments;

b. We are then to be reimbursed up to the amount we paid; and

c. Any remainder shall be available to the interest of those over whom this coverage is in excess and who are entitled to claim such remainder.

In its final order, the circuit concluded, in essence, that because KVR had not been fully compensated for its losses, CNA was barred from pursuing a subrogation claim against KVR, notwithstanding the foregoing policy language, pursuant to the made-whole doctrine.[3]

CNA argues that the V.H.11 subrogation provision in its policy is a valid contractual obligation contrary to the made-whole doctrine. CNA asserts that the provision is plain and unequivocal, and must be given effect without regard to the made-whole doctrine. In this respect, CNA argues that under provision V.H.11(b) of the policy it is entitled to a favored position to the insured with respect to amounts recovered. KVR replies that the circuit court correctly found that CNA's claim for recovery was barred by the made-whole rule. KVR asserts that section V.H.11 does not constitute a valid contractual obligation contrary to the made-whole rule.

■ In defining the made-whole doctrine, this Court has previously explained, and we now hold, that " '[u]nder general principles of equity, *in the absence of statutory law or valid contractual obligations to the contrary,* an insured must be fully compensated for injuries or losses sustained (made whole) before the subrogation rights of an insurance carrier arise.' " *Bush v. Richardson,* 199 W.Va. 374, 378, 484 S.E.2d 490, 494 (1997) (some emphasis added) (citing *Porter v. McPherson,* 198 W.Va. 158, 162, 479 S.E.2d 668, 672 (1996)).

This Court has never before expressly addressed the question of whether specific language contained in an insurance policy may operate to override the made-whole doctrine.[4] We observe, however, that a majority of jurisdictions addressing such a question have concluded that parties may contract out of the rule.[5] Our statement of the made-whole rule is in harmony with this majority.

■ While our rule expressly permits parties to contractually alter the made-whole doctrine, it is important to note that the rule is not overcome merely by the inclusion in an insurance policy of a general statement that the insurer is entitled to subrogation. *See Wine v. Globe Am. Cas. Co.,* 917 S.W.2d 558, 564 (Ky.1996) ("We need not address [the] issue [of whether the equitable principles of subrogation may be modified by an insurance policy] because the three insurance policies in question contain no clause which contravenes the equitable principles outlined earlier

---

3. In its final order in this case, the circuit court noted that CNA had asserted its claim pursuant to a condition of the policy, "Condition J," that had been deleted. Because the condition had been deleted, the circuit court concluded that CNA could not assert a claim pursuant to that provision. After noting that "Condition J" had been replaced by "Section V.H., the 'Subrogation' provision of the Policy," the court stated "[e]ven if CNA had pursued a subrogation claim against KVR, its claim would be barred pursuant to the made-whole doctrine since KVR has not been fully compensated for its losses." The circuit court did not expressly interpret the language of Section V.H.11 of the policy in its final order, instead resolving the issue on other grounds. Nevertheless, the circuit court did restate the full language of provision V.H.11 in the order, thus demonstrating that the policy language had been brought to the court's attention prior to its resolution of this matter. Because provision V.H.11 was before the circuit court prior to its resolution of this case, we may properly address issues related to that provision that are raised on appeal.

4. This Court has, however, found that statutory provisions override the doctrine. *See, e.g., Grayam v. Department of Health and Human Res.,* 201

W.Va. 444, 498 S.E.2d 12 (1997) (concluding that amendments to statute governing subrogation claims by the Department of Health and Human Resources rendered made-whole rule inapplicable); *Bush v. Richardson,* 199 W.Va. 374, 484 S.E.2d 490 (1997) (finding made-whole doctrine inapplicable in light of subrogation provisions contained in Workers' Compensation statute).

5. *See Duncan v. Integon Gen. Ins. Corp.,* 267 Ga. 646, 647, 482 S.E.2d 325, 326 (1997) ("[N]early every appellate court that has considered the question has recognized that unless an insurance policy contains a provision to the contrary, an insurer's right to recover under a subrogation clause of an insurance policy requires that the insured must have been fully compensated for the loss covered by the policy.") (citation omitted). *Accord Cagle v. Bruner,* 112 F.3d 1510 (11th Cir.1997); *District No. 1—Pac. Coast Dist. v. Travelers Cas. & Sur. Co.,* 782 A.2d 269 (D.C. 2001); *Westendorf v. Stasson,* 330 N.W.2d 699 (Minn.1983); *Shelter Ins. Cos. v. Frohlich,* 243 Neb. 111, 498 N.W.2d 74 (1993).

in this decision. The policy language cited ... only provides the insurance carrier the right of subrogation, i.e., at some future time to be substituted in the place of its insured."); *Shelter Ins. Cos. v. Frohlich*, 243 Neb. 111, 118, 498 N.W.2d 74, 79 ("[I]f a contractual right of subrogation is merely the usual equitable right which would have existed in any event in the absence of a contract, equitable principles control subrogation.").[6]

■ Indeed, subrogation is an equitable principle and, as such, the general rules of equity, including the made-whole rule, will apply regardless of whether the subrogation arises from common law or by contract, unless a contrary agreement is clearly and expressly stated. *See Kittle v. Icard*, 185 W.Va. 126, 130, 405 S.E.2d 456, 460 (1991) (" 'Whether legal or conventional, subrogation is an equitable remedy.' ") (quoting *State Farm Mut. Auto. Ins. Co. v. Foundation Reserve Ins. Co.*, 78 N.M. 359, 363, 431 P.2d 737, 741 (1967)), *superseded by statute on other grounds as stated in Grayam v. Department of Health and Human Res.*, 201 W.Va. 444, 498 S.E.2d 12 (1997). *See also Westendorf v. Stasson*, 330 N.W.2d 699, 703 (Minn.1983) ("[S]ubrogation remains an offspring of equity. Thus, even when the right to subrogation arises by virtue of an agreement, the terms of the subrogation will nonetheless be governed by equitable principles, unless the agreement *clearly and explicitly* provides to the contrary." (emphasis added)); *Shelter Ins. Cos. v. Frohlich*, 243 Neb. 111, 118, 498 N.W.2d 74, 79 ("[U]nless a contract *specifically* provides otherwise, equitable principles apply even when a subrogation right is based on contract." (emphasis added) (citations omitted)).

■ In the instant case, we have examined the language asserted by CNA as overcoming the made-whole rule. Contrary to CNA's

conclusion, we find that the policy language in question expressly *adopts* the made-whole rule.

■ Provision V.H.11 of CNA's policy is titled "Subrogation." With respect to amounts recovered after CNA's payment of a claim, Section V.H.11 of the policy asserts CNA's right to subrogation and establishes an order of distribution. Pursuant to subsection (a) of V.H.11, "[a]mounts recovered shall be apportioned in the following order: (a) Amounts paid in excess of the payments under this policy shall *first* be reimbursed up to the amount paid by those, *including you*, who made such payments." (Emphasis added).[7] We recognize that subsection (a) refers to "amounts paid" by the insured rather than to "losses incurred." To the extent that the clause refers to payments made by KVR, as opposed to its losses, the provision is ambiguous as applied to the circumstances of this case. " 'It is well settled law in West Virginia that ambiguous terms in insurance contracts are to be strictly construed against the insurance company and in favor of the insured.' Syl. pt. 4, *National Mut. Ins. Co. v. McMahon & Sons, Inc.*, 177 W.Va. 734, 356 S.E.2d 488 (1987)." Syl. pt. 4, *Riffe v. Home Finders Assocs.*, 205 W.Va. 216, 517 S.E.2d 313 (1999). Interpreting the ambiguity in favor of KVR, we find subsection (a) directs that amounts recovered in connection with KVR's losses shall first be distributed to KVR to the extent of those losses. Accordingly, subsection (a) of provision V.H.11, by its very terms, requires that KVR be made-whole before CNA may assert its right to recover under subsection (b).

Based upon the foregoing analysis, we conclude that the made-whole doctrine applies to this case. Consequently, the circuit court correctly determined that, because KVR's losses sustained during the policy period exceeded the amount of its recovery attribut-

---

6. *Accord District No. 1—Pac. Coast Dist. v. Travelers Cas. & Sur. Co.*, 782 A.2d 269; *Cagle v. Bruner*, 112 F.3d 1510; *Duncan v. Integon Gen. Ins. Corp.*, 267 Ga. 646, 482 S.E.2d 325.

7. In its appellate brief, CNA contends that "[n]either party presented any evidence or argument that would suggest that paragraph (a) was relevant to the issue to be determined." CNA does,

nevertheless, seek to have this Court examine paragraph (b). We note, however, that, as with paragraph (a), there was no evidence or argument related to paragraph (b) presented below. Thus, CNA's asserted reason for this Court to refuse to interpret paragraph (a) applies equally to paragraph (b). We are unpersuaded by this argument. For an explanation of why provision V.H.11, as a whole, is properly before this Court, see *supra* note 3.

able to that same period, CNA does not have a right to any of the funds recouped by KVR.

### B. Attorney's Fees

 With respect to the circuit court's *sua sponte* award of attorney's fees without conducting a hearing to allow CNA to dispute the award, CNA contends that it was denied due process. We agree.[8]

We have previously determined, on numerous occasions, that a circuit court has erred by failing to afford a party notice and the opportunity to be heard prior to awarding attorney's fees. In *Czaja v. Czaja*, we commented that

> [i]n this case, the lower court decided to award attorney's fees and then, without providing Appellant's counsel an opportunity to address either Appellee's entitlement to fees or the reasonableness of the fee award itself, the circuit court approved an order prepared by Appellee's counsel, which directed that $6080.50 in cumulative fees and costs were to be paid by Appellant's counsel within seven days.

> In failing to accord Appellant's counsel an opportunity to respond to the lower court's basis for assessing fees and costs, the most basic of all protections inherent to our judicial system has been violated.

208 W.Va. 62, 75–76, 537 S.E.2d 908, 921–22 (2000). Similarly, in *Daily Gazette Co. v. Canady*, we observed that " '[l]ike other sanctions, attorney's fees certainly should not be assessed lightly *or without fair notice and an opportunity for a hearing on the record.*' " 175 W.Va. 249, 251, 332 S.E.2d 262, 264 (1985) (emphasis added) (quoting *Roadway Express, Inc. v. Piper*, 447 U.S. 752, 766–67, 100 S.Ct. 2455, 2464, 65 L.Ed.2d 488, 501–02 (1980)). Accordingly, we find the circuit court erred in awarding attorney's fees

to KVR without affording CNA notice and an opportunity to be heard.[9]

### IV.

### CONCLUSION

For the reasons explained in the body of this opinion, we conclude that the circuit court did not err by ordering that CNA was barred by the made-whole doctrine from asserting its subrogation rights with respect to the funds recovered by KVR. Additionally, we find that the circuit court did err in *sua sponte* awarding attorney fees to KVR without first conducting a hearing to provide CNA an opportunity to challenge such an award. Consequently, the circuit courts rulings are affirmed in part, reversed in part, and this case is remanded for additional proceedings not inconsistent with this opinion.

Affirmed in part, Reversed in part, and Remanded.

---

8. KVR submits that the circuit court's decision granting attorney fees and costs is not yet final as that order has been stayed pending this Court's resolution of CNA's appeal seeking subrogation. We disagree. The circuit court entered a final order awarding attorney fees to KVR. The fact that the circuit court subsequently stayed the enforcement of that order does not affect its finality or divest this court of jurisdiction to review the order.

9. The record in this case reveals that the circuit court appears to have recognized its error. In

this regard, the circuit court has indicated to the parties its intent to conduct a hearing on attorney's fees following the resolution of this appeal. Nevertheless, the circuit court's failure to vacate its prior order awarding attorney's fees necessitated our consideration of this issue. Additionally, we note that CNA has raised other issues challenging the propriety of awarding attorney's fees in this case and alleging deficiencies in the circuit court's written order. Because we remand this case for the circuit court to reconsider the issue of attorney's fees following a proper hearing, we decline to address these issues.