George Demos, Plaintiff-Appellee, Cross-Appellant, *v.* Despina Demos, Counterplaintiff-Appellant, Cross-Appellee—(Bessie Demos *et al.*, Third-Party Defendants-Appellees.)

(No. 71-270;

Second District—December 6, 1972.

John R. Mackay, of Corrigan, McKay, Quetsch & O'Reilly, of Wheaton, for appellant.

William J. Harte, of Chicago, and John E. Waghorne, of Addison, both for appellees.

Mr. JUSTICE THOMAS J. MORAN delivered the opinion of the court:

Plaintiff-husband brought suit for separate maintenance. The counterplaintiff-wife (hereinafter referred to as defendant) filed a counter com-

plaint for divorce and sought to have the assignment of the beneficial interest in a land trust, holding title to a certain apartment building, set aside as a fraud upon her marital rights. The third party defendants are the mother, brother and sister of plaintiff; the mother and brother claim the beneficial interest in the trust.

The trial court granted a divorce to defendant and awarded her periodic alimony, child support and plaintiff's one-half interest in the marital residence which was held in a separate land trust. The court held no fraud had been perpetrated upon defendant's marital rights and denied her any interest in and to the apartment property.

Defendant appeals from that portion of the decree holding there was no fraud upon her marital rights. Plaintiff cross appeals, contending that the court erred in awarding his interest in the marital home to defendant. (Plaintiff's second contention, the excessivenes of the alimony awarded, was withdrawn during oral argument and is not here considered.)

The parties were married in Greece on December 12, 1955, and lived together until the summer of 1967. The evidence shows they experienced domestic difficulties throughout their married life.

In 1963, plaintiff negotiated the purchase of five vacant lots which were placed in a land trust, with a bank as trustee. The beneficiary clause of the trust agreement read: "George Demos, and in case of death, then unto Despo [Despina] Demos." The agreement provided that plaintiff was to have the sole power of direction over the corpus of the trust.

Plaintiff's testimony, both direct and as an adverse witness, revealed the following: The $25,500 purchase price of the lots was supplied by plaintiff's father while plaintiff held the beneficial interest in the property for the benefit of his mother and father. After acquiring the land, plaintiff endeavored to have it rezoned to allow construction of a thirty-six unit apartment building. Unsuccessful, he arranged financing for a twelve-unit structure, applying for a mortgage in his own name on the representation that he owned the property. The mortgage obtained, plaintiff transferred his interest in the land trust to Glen-Al Corporation in which he held all shares of stock. On October 2, 1967, a few days after the closing of the mortgage, plaintiff transferred his entire interest in the corporation, 800 shares going to his mother and 200 to his brother. Plaintiff received no money for the transfer. It is this assignment which defendant seeks to have set aside.

Relative to her contention of fraud, defendant's evidence primarily consisted of her assertion that plaintiff had repeatedly threatened to leave her without any assets; various documents were introduced which indicated that, in financial dealings, plaintiff had represented the apartment as his own.

908

Defendant testified that, at the time of their marriage, she had a dowry of eight hundred golden pounds ($8,000) which was given to plaintiff's father; that from the time of their marriage until he went into business in 1961, plaintiff had no assets except her dowry and the marital home; that her husband once showed her the property in question and claimed he would be a millionaire; that around 1962 she went to a safety deposit box registered to herself and plaintiff where she saw a large amount of money, but left without counting or taking it because she feared she was being observed.

Plaintiff denied he had threatened to leave his wife without assets, that he received a dowry from her or that he ever put any money in a safety deposit box. He asserted that he had no money or property when married, and had accumulated none since except for the marital residence which was purchased with a one thousand dollar down payment borrowed from a bank.

Plaintiff's mother testified that the lots in question are hers (her husband having died in November of 1965). Plaintiff's brother, James, testified that he was familiar with the purchase of the lots, that the money for them was supplied by his father and that plaintiff held the beneficial interest for his parents. James stated that he had paid his mother for his twenty percent share in the property, that he manages the building without compensation and that he and his mother receive the income from the building while plaintiff never has.

As grounds for reversal, defendant contends that the conduct of plaintiff and his family clearly manifested an intention to perpetrate a fraud upon her marital rights. Defendant passingly suggests that the burden of proof was on the third party defendants but, in actuality, argues that the evidence supported the charge of fraud.

■■ Defendant concedes the status of the law to be that one has a right to dispose of his or her property during coverture without securing the consent of the spouse, provided the transaction is *bona fide*. If, however, a transfer of property is merely a sham and colorable so that the husband or wife retains a collusive or secret ownership, the law will regard it as having been made with fraudulent intent. *Holmes v. Mims*, 1 Ill.2d 274, 279 (1953); *Hoeffner v. Hoeffner*, 389 Ill. 253, 260-261 (1945); *Smith v. Northern Trust Co.*, 322 Ill.App. 168, 173-176 (1944).

To establish fraudulent intent, it was necessary that defendant prove the property actually belonged to her husband and that he retained some interest in or control of it after transfer. While defendant's evidence showed that plaintiff had represented, to both his wife and financial institutions, that he owned the property and that several negotiations relative to the property were arranged in plaintiff's name, the evidence

given by plaintiff and members of his family tended to prove that plaintiff had merely acted as an agent in obtaining the property and financing, while the beneficial interest was held for his parents.

■■ The conflicting evidence on whether plaintiff originally owned the property, presented a question of fact for determination by the trial court. There is no evidence in the record to show that plaintiff retained any interest in or control of the property after its transfer to the Glen-Al Corporation. As observed by the third party defendants in their brief, the manifest weight of the evidence test is to be applied in reviewing the findings of the trial court. We cannot say that its finding in favor of the third party defendants is clearly against the manifest weight of the evidence. The trial court is, therefore, affirmed on this issue.

Plaintiff contends that the trial court erred in granting his one-half share in the marital residence to defendant, arguing that this was an award of alimony in gross, impermissible where the court also granted periodic alimony of $75.00 per week.

Two sections of the Divorce Act set forth the courts power to order a conveyance of property from one spouse to the other under a divorce decree. Section 17 of the Act (Ill. Rev. Stat. 1969, ch. 40, sec. 18), allows a conveyance if one of the partners is shown to have "special equities" in the property of the other. Section 18 (Ill. Rev. Stat. 1969, ch. 40, sec. 19), allows such a transfer as a settlement in lieu of alimony. See, *Schwarz v. Schwarz*, 27 Ill.2d 140, 149 (1963).

■■ Defendant has shown no special circumstances to prove that plaintiff's interest in the property equitably belongs to her and therefore has no claim to that interest under Section 17. Neither may she be granted her husband's share under Section 18, for the award of plaintiff's interest, in the absence of special equities, amounts to alimony in gross which can only be allowed in lieu of periodic or permanent alimony. (*Overton v. Overton*, 6 Ill.App.3d 1086, 1090-1091 (1972); *Debrey v. Debrey*, 132 Ill. App.2d 1072, 270 N.E.2d 43, 45-46 (1971).) It was error for defendant to be granted permanent alimony in addition to plaintiff's interest in the marital residence.

We therefore reverse the trial court on this issue and remand the cause with directions to reconsider whether alimony in gross or permanent alimony should be allowed.

Affirmed in part; reversed in part and remanded with directions.

SEIDENFELD, P. J., and ABRAHAMSON, J., concur.