HARRIET W. HOGAN, Plaintiff-Appellee, *v.* WILLIAM F. HOGAN, Defendant-Appellant.

First District (3rd Division)    No. 77-710

Opinion filed March 29, 1978.

Anthony J. Pauletto, of Chicago, for appellant.

Jerome Berkson and Beermann, Swerdlove, Woloshin & Barezky, both of Chicago (Miles N. Beermann, of counsel), for appellee.

Mr. JUSTICE McNAMARA delivered the opinion of the court:

The parties to this action were divorced in 1976. On January 10, 1977, a supplemental judgment was entered awarding plaintiff permanent alimony and child support, granting her special equities in all real estate owned by defendant, ordering defendant to maintain his life insurance policies with plaintiff as named beneficiary, ordering defendant to convey to plaintiff his one-half interest in the jointly owned marital home subject to defendant's equitable lien, and awarding plaintiff attorney's fees and costs. Defendant appeals.

At the time the parties were married in 1951, plaintiff was employed as a typist and defendant was serving in the army. During defendant's tour of duty, plaintiff accumulated approximately $6,000 from their joint earnings which was later used, in large part, to furnish their first apartment. When defendant commenced civilian employment in 1954,

plaintiff quit and has not been employed since. Defendant is employed by Medidentic, Inc., a firm in the business of providing management consultation for the medical and dental professions. He became vice-president of the firm in 1965.

The parties have three children. At the time of the divorce, two children had attained their majority and were attending college. Defendants pays approximately $700 per month for their education. The third child, aged 15, lives with plaintiff in the marital home.

From 1954 to August 1, 1974, when the parties separated, almost all defendant's earnings were deposited in a joint checking account with plaintiff. Plaintiff contributed no money to the account. These funds covered all expenses and were used to purchase several parcels of real estate. Title to the real estate was held as follows: the parties owned the marital home in joint tenancy; plaintiff held title to two condominiums in Florida, one individually and the other in equal partnership with two of defendant's business associates; defendant held title to two condominiums in Florida, one individually and the other in partnership with a Dr. Keverian; he also held title to three farms in Wisconsin in partnership with a Charles Martin. Plaintiff sold one of her condominiums during the divorce proceedings and, after paying fees and outstanding liens, received approximately $2,300. Defendant sold one of the farms and netted $19,673. In the trial court, defendant expressly renounced any claims he might have to the two condominiums which were in plaintiff's name.

At the time of trial, defendant earned approximately $51,000 per year and had a net expendable income of $39,000. He had $1,500 in a checking account, $1,000 in stocks, and had no savings. He owned an estimated 25% of the common stock of Medidentic which he valued at $150,000. He maintained three life insurance policies on his life totaling $59,000. In the trial court, defendant indicated that he was in the process of changing the beneficiary on these policies from plaintiff to the children. '

In the course of the proceedings, plaintiff inherited $12,288 from an uncle. At the time of the entry of the decree she had cash holdings of $13,729 and stocks worth $13,000. Plaintiff testified that basic monthly living expenses for herself and her minor son amounted to approximately $630.

On the basis of the foregoing evidence, the trial court awarded plaintiff $750 per month permanent alimony and $300 per month child support. The court further granted plaintiff special equities in and declared her one-half owner of all real property owned by defendant individually or in partnership with others. Similarly, defendant was granted a one-half interest in the two parcels held by plaintiff.

The trial court found that each party was a one-half owner of the

marital home which was valued at $57,000 and encumbered with a $17,000 mortgage. Defendant was ordered to convey his one-half interest to plaintiff, subject to a $20,000 equity. Defendant's equity was reduced by $12,600, representing amounts owing plaintiff from the proceeds on the sale of the farm, one-half of a joint debt assumed by plaintiff, and a portion of the liens paid by plaintiff upon the sale of the condominium. Defendant's equitable lien, therefore, amounted to $7,400.

Defendant was ordered to keep his life insurance policies in full force and effect "naming plaintiff as irrevocable beneficiary until her death, remarriage or his obligation for permanent alimony support is terminated." Finally defendant was ordered to pay $8,233.86 in attorney's fees at the rate of $300 per month.

Defendant's initial contention that the $750 per month alimony awarded to plaintiff is excessive merits scant attention. The amount of an award of alimony rests primarily in the discretion of the trial court and its findings will not be set aside unless they are contrary to the manifest weight of the evidence. (*Hoffmann v. Hoffmann* (1968), 40 Ill. 2d 344, 239 N.E.2d 792.) The proper measure of an alimony award is the need of the wife and the ability of the husband to pay. (*Gilmore v. Gilmore* (1975), 28 Ill. App. 3d 36, 328 N.E.2d 562.) The evidence, as recited above, amply supports the amount of alimony awarded.

Defendant next contends that the trial court erred in granting plaintiff special equities in all real estate owned by him. The conveyance of property held by one spouse in which the other asserts an interest is governed by section 17 of the Divorce Act (Ill. Rev. Stat. 1975, ch. 40, par. 18), which provides:

> "Whenever a divorce is granted, if it shall appear to the court that either party holds the title to property equitably belonging to the other, the court may compel conveyance thereof to be made to the party entitled to the same, upon such terms as it shall deem equitable."

Defendant argues that since these acquisitions were made with funds from the joint family checking account, comprised of defendant's earnings, the court erred in awarding plaintiff a one-half interest in those parcels owned by defendant.

■■ In Illinois, a court may compel a conveyance of property owned by one spouse to the other only where the party seeking such a conveyance proves special circumstances entitling that party to an equitable interest in the property. (*Everett v. Everett* (1962), 25 Ill. 2d 342, 185 N.E.2d 201; *Overton v. Overton* (1972), 6 Ill. App. 3d 1086, 287 N.E.2d 47.) The spouse claiming special equities must allege and prove that he or she contributed money or services, other than those normally performed in the marriage relationship, which were used directly or indirectly to

acquire or enhance the value of the property in question. *Everett v. Everett.*

In *Leone v. Leone* (1976), 39 Ill. App. 3d 547, 350 N.E.2d 545, the court found that plaintiff demonstrated a right to an equitable interest in her husband's assets. Plaintiff had contributed approximately $10,800 to her husband's business in the form of monetary contributions and services performed as the corporate secretary. In contrast, the court in *Everett* held that even though plaintiff showed that she had contributed almost $8,000 toward the acquisition and maintenance of the family residence, she was not entitled to a one-half interest in the marital home. The court instead held she was entitled to an equitable lien in the residence in the amount of her contributions. It is evident that in order to warrant a finding of special equities in property held by one spouse, the other must prove a rather substantial contribution to the acquisition of such property.

■■ In the present case, plaintiff relies heavily upon the existence of the joint checking account and her ownership of one-half the funds deposited in that account by defendant to support the court's finding that she was entitled to special equities in defendant's property. In *Stotlar v. Stotlar* (1977), 50 Ill. App. 3d 790, 365 N.E.2d 1097, this court resolved the same contention adversely to plaintiff. There the court found the fact that the parties chose to transact their financial affairs during their marriage through the medium of a joint checking account was insufficient to support a finding of special equities in favor of plaintiff where she admitted that none of the funds were earned or provided by her. As here, the joint account in *Stotlar* consisted almost entirely of the husband's earnings. Consequently, plaintiff here may not claim a one-half interest in the parties' joint checking account.

Plaintiff's claim to special equities in defendant's property, therefore, must rest upon her contributions to the account made at the outset of the marriage. We find that even if such contributions could be traced to the acquisition of any real property held by defendant, they would not warrant the award of special equities to plaintiff. A similar situation is found in *Overton v. Overton* where plaintiff was employed for two years during a 20-year marriage. She earned approximately $1,000 in the two years. Plaintiff also answered her husband's business telephone and performed certain bookkeeping services. The court found such contributions insufficient to support an award of special equities in defendant's property to plaintiff. We agree with the *Overton* result and hold that plaintiff did not establish any special equities in the property owned by defendant and was not entitled to the one-half interest therein.

Defendant next contends that the trial court erred in requiring him to convey to plaintiff his one-half interest in the jointly owned marital home.

The trial court initially found that each party possessed a $20,000 interest in the net equity of the home. The court then reduced defendant's equity by the following amounts: $9,836, representing one-half the proceeds from the sale of one farm in which plaintiff was granted special equities; $2,500, representing one-half of a joint debt assumed by plaintiff; $264, arrived at by charging defendant with one-half of the outstanding liens paid by plaintiff on one condominium less credit due him of one-half the proceeds received by plaintiff on the sale thereof. After conveyance of his one-half interest, defendant was granted an equitable lien on the property in the amount of $7,400.

Two provisions of the Divorce Act permit a court to compel one spouse to convey his or her interest in property. The first is section 17, quoted above. The other is section 18 (Ill. Rev. Stat. 1975, ch. 40, par. 19), which provides in part:

> "The court may order the husband or wife, as the case may be, to pay to the other party such sum of money, or convey to the party such real or personal property, payable or to be conveyed either in gross or by installments as settlement in lieu of alimony, as the court deems equitable."

In the present case, the order compelling defendant to convey to plaintiff his interest in the marital home cannot be supported on the basis of section 18. The trial court had awarded permanent periodic alimony to plaintiff. In a divorce proceeding, a court cannot award both permanent periodic alimony and alimony in gross under section 18. (See *Demos v. Demos* (1972), 8 Ill. App. 3d 906, 290 N.E.2d 304.) Nor can the order be supported on the basis of section 17. As we have held, plaintiff has not proved any special equities in any of the property. Title to the marital home was held by the parties in joint tenancy and the trial court correctly found that each was the owner of one-half interest. The court erred, however, in requiring defendant to convey his one-half interest to plaintiff since she did not demonstrate special equities in the residence. Moreover, the amounts deducted from defendant's $20,000 interest were unwarranted. The $9,836 deduction was based upon the court's finding that plaintiff was entitled to a one-half interest in the farm sold by defendant. This finding was erroneous. Finally, defendant did not allege or prove, but rather expressly disclaimed any special equities to property held in plaintiff's name. The trial court therefore incorrectly deducted $264, representing a portion of the liens paid by plaintiff on her condominium, from defendant's interest in the marital home.

■■ Defendant next contends that the trial court erred in requiring him to keep his insurance policies in force, naming plaintiff as the irrevocable beneficiary. The power of a court to require a party to furnish security to

insure compliance with a decretal order also is covered by section 18 of the Divorce Act which in pertinent part provides:

"In any order entered pursuant to this Section, the court may order the defendant to give reasonable security for such alimony and maintenance * * * where a party willfully refuses to comply with the court's order to pay alimony and maintenance * * * or has shown himself unworthy of trust." Ill. Rev. Stat. 1975, ch. 40, par. 19.

In *Imbrie v. Imbrie* (1968), 94 Ill. App. 2d 60, 236 N.E.2d 381, we held that the trial court had not abused its discretion in requiring defendant to maintain his insurance in plaintiff's name on behalf of their children since defendant was in arrears on his temporary alimony and support orders at the time the decree was entered. In *Robin v. Robin* (1977), 45 Ill. App. 3d 365, 359 N.E.2d 809, this court held that a defendant may be required to maintain insurance to secure child support payment. The court, however, found that an increase in child support was excessive and remanded the cause. The factor common to both cases is that the trial court found defendants were delinquent in their payment and determined that some form of security was essential to insure future compliance.

In the present case, defendant has not demonstrated any unwillingness to comply with the decretal order nor has he shown himself unlikely to obey. Prior to the entry of the final judgment, defendant had continued making payments under a temporary support order even though the order had expired by its own terms. The trial court was not warranted in finding that security was necessary to secure defendant's alimony payments.

Defendant finally urges that the trial court erred in awarding plaintiff attorney's fees. He argues that any award of fees to plaintiff is not supported by the evidence and alternatively challenges the amount of fees awarded, $8,233.86, as excessive.

■■ We find that the trial court did not abuse its discretion in awarding attorney's fees to plaintiff. She was not required to exhaust her estate to protect her rights in the marital litigation. (See *Kaufman v. Kaufman* (1974), 22 Ill. App. 3d 1045, 318 N.E.2d 282.) The record reveals that plaintiff was financially unable to pay the fees and that defendant was able to do so.

As to the amount awarded, the record shows that the trial court increased defendant's share of the fees from $2,100 on September 9, 1976, to $8,233.86 on January 10, 1977. At the time of the original assessment, plaintiff's petition indicated that, as of July 23, 1976, the time expended by her counsel totalled 106¾ hours. The trial court ordered defendant to pay the aforementioned $2,100. On November 8, 1976, plaintiff requested a

reconsideration of the amount of fees awarded, alleging the value of her counsel's services to exceed $15,000. No hearing was had on this motion. Plaintiff's counsel represented her at two subsequent hearings prior to the entry of the supplemental judgment. There was no evidence in the record itemizing the services rendered by plaintiff's counsel after July 23, 1976.

While a hearing on the reasonable nature of attorney's fees is not necessary in every case, especially where the trial judge is familiar with the procedural history of the case (see *Kaufman v. Kaufman*), the party contesting the award is entitled to a hearing upon request. (*Jones v. Jones* (1964), 48 Ill. App. 2d 232, 198 N.E.2d 195.) In the present case, one of defendant's objections to the amended award of fees was that no hearing had been conducted regarding the reasonableness of the amount requested. We believe the trial court should have conducted such a hearing. That portion of the supplemental judgment is remanded with directions to hear evidence and to determine the reasonable value of counsel's service.

For the foregoing reasons, that portion of the supplemental judgment of the circuit court of Cook County ordering defendant to keep his insurance policies in force with plaintiff as named beneficiary is reversed. All other matters contained in the supplemental judgment still in dispute between the parties are reversed and remanded for further proceedings consistent with the holdings of this opinion.

Reversed in part; reversed and remanded in part.

JIGANTI, P. J., and McGILLICUDDY, J., concur.