695 S.E.2d 868

**In re JOHN T., Michael T., Natalie T. and Clare T.**

**No. 35281.**

Supreme Court of Appeals of
West Virginia.

Submitted March 2, 2010.

Decided June 4, 2010.

Mark A. Swartz, Esq., Allyson H. Griffith, Esq., Swartz Law Offices, PLLC, St. Albans, WV, for Michael T.

PER CURIAM:

This case is before this Court upon appeal of a final order of the Circuit Court of Kanawha County entered on May 11, 2009. In that order, the circuit court entered judgment against the appellant and respondent below, Jean K.,[1] in favor of the appellee and respondent below, Michael T., in the amount of $72,493.40, which represented his attorney's fees and costs incurred in this abuse and neglect proceeding. The circuit court found that Jean K. falsely accused Michael T. of sexually abusing one of their children causing him to unnecessarily incur attorney's fees and costs to defend himself. In this appeal, Jean K. first contends that the award of attorney's fees and costs was improper. Secondly, she asserts that if the award of attorney's fees was warranted, then the circuit court erred by not giving her the opportunity to challenge the reasonableness of the amount of fees requested by Michael T. In that regard, she claims that Michael T. was awarded fees that were, at least in part, incurred as a result of the parties' divorce proceedings, not the abuse and neglect case. Further, she argues that the fees that were awarded are excessive because it was not necessary for Michael T. to participate in all stages of the abuse and neglect proceeding as he was dismissed from the case following the adjudicatory hearing.

This Court has before it the petition for appeal, the entire record, and the briefs and argument of counsel. For the reasons set forth below, the final order is affirmed, in part, and reversed, in part, and this case is remanded to the circuit court for further proceedings consistent with this opinion.

## I.

### FACTS

Mary M. Downey, Esq., Charleston, WV, for Jean K.

Michael T. and Jean K. were married in 1988 and separated on June 6, 2005. They

---

1. We follow our traditional practice in cases involving sensitive facts and use initials to identify the parties rather than their full names. *See, e.g.,* *In the Matter of Jonathan P.,* 182 W.Va. 302, 303 n. 1, 387 S.E.2d 537, 538 n. 1 (1989).

had four children at the date of separation: John T., Michael T., III, Natalie T., and Clare T. Subsequently, Jean K. filed for divorce. At the initial divorce hearing, the family court judge ordered Jean K. to undergo a psychiatric evaluation after reviewing her diary which was submitted into evidence by Michael T. The family court awarded temporary custody of the children to Michael T., and Jean K. was granted supervised visitation. After three months of supervised visitation between the children and Jean K., the family court judge allowed shared parenting whereby the children began spending time at both of their parents' homes.

Prior to the final divorce hearing, Jean K. alleged that Michael T. had sexually abused their youngest daughter, Clare T., then age three. The family court appointed a psychologist to conduct psychological evaluations of the parents and children. The sexual abuse allegations were not substantiated.

Jean K. made a second allegation of sexual abuse on February 4, 2007. At that time, she took Clare T. to a hospital emergency room. The child was examined, but no evidence of sexual abuse was found. The next day, Jean K. took Clare T. to her family practitioner, Dr. Susan Cavender. She reported that Clare T. had "very red and irritated genitalia." There had been no contact between the child and her father, Michael T., between the two examinations.

During a forensic taped interview conducted on February 20, 2007, Clare T. indicated that her father had sexually abused her. However, during the first three minutes of the interview, she said, "I get to go to the toy store if I answer right." A psychologist retained as an expert on behalf of Michael T. reviewed the taped interview and opined that Clare T.'s answers to the interviewer were contaminated by multiple and repeated questioning and the interview exceeded the acceptable age-appropriate time limit. He also noted that the interviewer did not explore possibilities other than sexual abuse by Michael T.

In March 2007, the family court held a full evidentiary hearing and found that there was no credible evidence that Clare T. had been sexually abused by her father. The family court allowed Michael T. to have daily supervised visits with Clare T. pending a final order on a domestic violence petition which Jean K. had filed on February 10, 2007, following her second allegation of sexual abuse. Michael T.'s visits were being supervised by family friends (hereinafter referred to as "the P. family"). Approximately two weeks later, Jean K. took Clare T. to what she termed a "safe house" because she believed that Michael T. was sexually abusing the child in the presence of the P. family.[2] At this point, the West Virginia Department of Health and Human Resources (hereinafter "DHHR") became involved, and an abuse and neglect petition was filed against both parents on March 23, 2007. Clare T. was placed in foster care with the P. family. The two boys, John T. and Michael T., III, continued to reside with their father and Natalie T. remained in the custody of her mother.

Subsequently, Clare T. recanted the sexual abuse allegations against her father while talking to the guardian ad litem and her therapist. She indicated that she felt pressured by her mother. From March 2007 onward, both parents had supervised visits with Clare T. In May 2007, the DHHR advised the circuit court that it was only proceeding against Jean K. because there was no credible evidence that Michael T. had ever abused or neglected any of the children in general, or in particular, that he had ever sexually abused Clare T.

In December 2007, Jean K. asserted for the third time that Clare T. had been sexually abused by her father. This allegation was made after Clare T. told her foster parents that she had a tummy ache. The foster father and the guardian ad litem took Clare T. to an urgent care facility for an evaluation. When asked where she hurt, Clare T. pointed to her chest. The doctor found nothing wrong. The information was related to Jean K. by the foster father. Based on this information, Jean K. reported that she believed Michael T. was sexually abusing Clare T. in the presence of her foster parents.

---

2. The record indicates that Jean K. actually took Clare T. to a hotel out of town.

An evidentiary hearing was held concerning the new sexual abuse allegations in December 2007. It was found that Michael T. did not have any opportunity to sexually abuse Clare T. as he had not been alone with her during his supervised visits. During the hearing, the guardian ad litem moved to terminate Jean K.'s visits with Clare T. stating, "We cannot allow Clare to continue to be emotionally abused by someone that has a belief that there are sexual molestations occurring." The circuit court granted the guardian's motion on January 8, 2008.

The adjudicatory order was entered on June 2, 2008. The circuit court found that there was no credible evidence that Michael T. physically, emotionally, or sexually abused any of the four children. Accordingly, the court dismissed the petition against Michael T. The court found, however, that Jean K. had subjected the three older children, Natalie T., John T., and Michael T., III, to severe emotional abuse and injury and had subjected Clare T. to severe sexual and emotional abuse and injury. The court further found that Jean K. had made "continued and repeated false allegations of sexual abuse by Michael [T.] upon Clare[T.]" The court ordered the gradual return of Clare T. to the custody of her father and denied Jean K.'s motion for an improvement period. Subsequently, the circuit court terminated Jean K.'s parental rights to Clare T., John T., and Michael, T. III. The court allowed Natalie T. to remain in her mother's custody per the child's wishes.[3]

Thereafter, Michael T. filed a motion seeking an award of attorney's fees and costs. On May 11, 2009, the Court granted Michael T.'s motion and ordered Jean K. to pay his attorney's fees and costs. Judgment was entered against Jean K. in the amount of $72,493.40. This appeal followed.

## II.

### STANDARD OF REVIEW

■■■ This Court applies a three-part standard of review to a decision of a circuit court. As explained in Syllabus Point 2 of

*Walker v. West Virginia Ethics Comm'n,* 201 W.Va. 108, 492 S.E.2d 167 (1997),

In reviewing challenges to the findings and conclusions of the circuit court, we apply a two-prong deferential standard of review. We review the final order and the ultimate disposition under an abuse of discretion standard, and we review the circuit court's underlying factual findings under a clearly erroneous standard. Questions of law are subject to a *de novo* review.

In the specific context of abuse and neglect proceedings, this Court has reiterated that "conclusions of law are subject to a *de novo* review, while findings of fact are weighed against a clearly erroneous standard." *In re Emily,* 208 W.Va. 325, 332, 540 S.E.2d 542, 549 (2000). Finally, with respect to an award of attorney's fees, this Court has held:

" ' " '[T]he trial [court] ... is vested with a wide discretion in determining the amount of ... court costs and counsel fees, [sic] and the trial [court's] ... determination of such matters will not be disturbed upon appeal to this Court unless it clearly appears that [it] has abused [its] discretion.' Syllabus point 3, [in part,] *Bond v. Bond,* 144 W.Va. 478, 109 S.E.2d 16 (1959)." Syl. Pt. 2, [in part,] *Cummings v. Cummings,* 170 W.Va. 712, 296 S.E.2d 542 (1982) [ (per curiam) ].' Syllabus point 4, in part, *Ball v. Wills,* 190 W.Va. 517, 438 S.E.2d 860 (1993)." Syllabus point 2, *Daily Gazette Co., Inc. v. West Virginia Development Office,* 206 W.Va. 51, 521 S.E.2d 543 (1999).

Syllabus Point 3, *Pauley v. Gilbert,* 206 W.Va. 114, 522 S.E.2d 208 (1999). With these applicable standards in mind, the issues presented in this case will be considered.

## III.

### DISCUSSION

■■■ In this appeal, Jean K. first argues that the circuit court's award of attorney's fees and costs was improper. "As a general rule each litigant bears his or her own attorney's fees absent a contrary rule of court or express statutory or contractual authority for reimbursement." Syllabus Point 2, *Sally–*

---

**3.** Natalie T. was 17 years old at that time.

*Mike Properties v. Yokum,* 179 W.Va. 48, 365 S.E.2d 246 (1986). This Court has long recognized this principle which has been characterized as the "American" rule, distinguishing it from the rule in England which allows attorney's fees to be recovered from the losing party. *Id.* at 52, 365 S.E.2d at 250. The purpose of the American rule is to allow "equal access to the courts for the resolution of *bona fide* disputes." *Id.* As with most rules, there are exceptions. In that regard, this Court held in Syllabus Point 3 of *Yokum* that "[t]here is authority in equity to award to the prevailing litigant his or her reasonable attorney's fees as 'costs,' without express statutory authorization, when the losing party has acted in bad faith, vexatiously, wantonly or for oppressive reasons." Syllabus Point 3, *Yokum.*

In this case, the circuit court concluded that Jean K. "acted fraudulently, in bad faith, vexatiously, wantonly and for oppressive reasons before the institution of [this] matter and throughout these proceedings" warranting an award of attorney's fees and costs in favor of Michael T. Jean K. argues that the record does not support the circuit court's conclusion. In particular, she asserts that the circuit court erred by finding that her conduct was the sole reason that the abuse and neglect petition was filed. She maintains that there was uncontradicted medical and forensic evidence from professionals in the community that Clare T. had been sexually abused by Michael T. at the time the abuse and neglect petition was filed. She also argues that it was not her conduct that caused these professionals to believe that Clare T. had been abused; rather, she contends that their opinions were based upon their examinations and interviews of Clare T.

Jean K. further argues that her conduct was not the reason that the case lingered in the circuit court for more than two and a half years. She maintains that the delays were the result of the circuit court not following the Rules of Procedure for Abuse and Neglect cases. She claims that hearings were not held and orders were not entered within the time parameters of the rules.

Jean K. also asserts that the circuit court erred by finding that her sexual abuse allega-

tions against Michael T. were baseless. She says that she believed that Michael T. had sexually abused their daughter because of what she was told by trained professionals who examined Clare T. Accordingly, she pursued protection for her daughter based on the expert opinions of these professionals who had no motivation to misrepresent the truth.

In response, Michael T. contends that the circuit court did not abuse its discretion in awarding him attorney's fees and costs. He contends that the record clearly shows that Jean K. acted vexatiously, wantonly, and oppressively for more than four years, making a never-ending series of false allegations that he was sexually abusing Clare T. He says that as a result, he incurred thousands of dollars of unnecessary legal fees to defeat her claims. Michael T. asserts that Jean K. is attempting in this appeal to once again relitigate issues that have already been decided as she continues to claim that there is evidence that he sexually abused Clare T. He argues that the only issue in this appeal is whether the circuit court abused its discretion in granting him attorney's fees and costs. He maintains that given Jean K.'s repeated false accusations and actions throughout this case, it cannot be reasonably said that the award of attorney's fees was improper.

■ Having carefully and thoroughly reviewed the record in this case, this Court finds that given the egregious facts and circumstances that resulted in the filing of the abuse and neglect petition as determined by the circuit court, the award of attorney's fees and costs was warranted. In other words, the circuit court found sufficient evidence in the record of bad faith, vexatious, wanton, and oppressive conduct on the part of Jean K. to trigger application of the exception to the American rule regarding attorney's fees as set forth in Syllabus Point 3 of *Yokum.* In fact, the circuit court found that Jean K.'s conduct was the sole reason that this abuse and neglect proceeding was filed.

Beginning in March 2006, Jean K. made a series of allegations that Clare T. was being sexually abused by Michael T. that ultimately led to more than two years of litigation in the

circuit court. It appears that every time the matter was close to being resolved, new allegations were made. In the end, the circuit court determined that Jean K.'s allegations were "unfounded, baseless, and fraudulent."

While Jean K. continues to maintain that her assertions against Michael T. are true, the circuit court found no credible evidence that he abused or neglected any of his four children. The circuit court did find, however, that Jean K.'s conduct was vexatious and wanton and that instead of accepting responsibility for her own actions and abuse of the children, she continued to make false accusations against Michael T. In that regard, the record indicates that when Jean K. made her second allegation of sexual abuse, she took Clare T. to the emergency room for an examination. The results of that examination were normal; there were no signs of sexual abuse. The next day, Jean K. took Clare T. to her own family doctor who reported that the child had "very red and irritated genitalia." Michael T. had no contact with Clare T. during the time period between the two examinations.

On another occasion, Jean K., in an apparent effort to substantiate her allegations, convinced an inexperienced child protective services worker, who was supervising a visitation between Jean K. and Clare T., to go with her and the child to a bathroom stall in the Charleston Town Center Mall. Although there was a court order expressly prohibiting Jean K. from taking Clare T. to the restroom, she questioned Clare T. in the presence of the social worker, while the child was sitting on the commode, as to whether or not her father was sexually abusing her. Based on all the above, the circuit court concluded that Jean K. subjected Clare T. to severe sexual and emotional abuse and injury.

Upon careful review and consideration of the record, including the orders of the circuit court, this Court concludes that the circuit court did not abuse its discretion in finding that Jean K. acted "in bad faith, vexatiously,

wantonly and for oppressive reasons" and awarding Michael T. his attorney's fees and costs in this matter. As a result of Jean K.'s actions, Michael T. incurred a substantial amount of unnecessary attorney's fees defending himself against her allegations. Under these circumstances, there is authority in equity to award Michael T. his attorney's fees and costs.

■ While we have concluded that attorney's fees and costs were properly granted, we, nonetheless, find that the circuit court erred by denying Jean K. the opportunity to challenge the reasonableness of the amount of fees and costs awarded to Michael T. The record shows that the matter was brought before the circuit court on April 22, 2009, at the end of the disposition hearing. Although Jean K. was given the chance to argue that Michael T. was not entitled to an award of attorney's fees and costs in this matter, she never had the opportunity to challenge the reasonableness of the amount of fees and costs that were ultimately granted. While the parties did submit briefs on the issue prior to the hearing, it appears from the record that Michael T.'s counsel did not submit his billing records to the circuit court until the end of the hearing on April 22, 2009.[4] The matter was taken under advisement at the end of the hearing, and it appears that once the circuit court determined that an award of fees and costs was proper, the amount granted was based upon the billing records submitted by Michael T.'s counsel. Consequently, Jean K. had an inadequate opportunity to respond to the reasonableness of the amount of fees that were requested.[5]

■ This Court has advised that " '[l]ike other sanctions, attorney's fees certainly should not be assessed lightly or without fair notice and an opportunity for a hearing on the record.' " *Daily Gazette Co., Inc. v. Canady*, 175 W.Va. 249, 251, 332 S.E.2d 262, 264 (1985) (quoting *Roadway Express, Inc. v.*

---

4. The billing records should have been included in Michael T.'s motion for attorney's fees or at least attached to the notice of hearing.

5. Clearly, the better course for Jean K.'s counsel would have been to file a written response to the billing records that were submitted by Michael T. Had she done so, the issues would have been crystallized, and the record would have been ripe for the court's decision.

*Piper,* 447 U.S. 752, 766–67, 100 S.Ct. 2455, 2464, 65 L.E.2d 488, 501–02 (1980)). Consequently, "we have previously determined, on numerous occasions, that a circuit court has erred by failing to afford a party notice and the opportunity to be heard prior to awarding attorney's fees." *Kanawha Valley Radiologists, Inc. v. One Valley Bank, N.A.,* 210 W.Va. 223, 229, 557 S.E.2d 277, 283 (2001). For example, in *Czaja v. Czaja,* 208 W.Va. 62, 75–76, 537 S.E.2d 908, 921–22 (2000),

> the lower court decided to award attorney's fees and then, without providing Appellant's counsel an opportunity to address either Appellee's entitlement to fees or the reasonableness of the fee award itself, the circuit court approved an order prepared by Appellee's counsel, which directed that $6080.50 in cumulative fees and costs were to be paid by Appellant's counsel within seven days.

This Court determined in *Czaja* that "[i]n failing to accord Appellant's counsel an opportunity to respond to the lower court's basis for assessing fees and costs, the most basic of all protections inherent to our judicial system has been violated." *Id.* at 76, 537 S.E.2d at 922. Accordingly, the court's award of fees in *Czaja* was reversed, and the case was remanded for an evidentiary hearing. The circuit court was directed to make appropriate findings of fact and conclusions of law with regard to any subsequent award of attorney's fees. *Id.* As this Court explained in *Aetna Casualty & Surety Co. v. Pitrolo,* 176 W.Va. 190, 195, 342 S.E.2d 156, 161 (1986), "[t]he trial court's failure ... to make any findings of fact or conclusions of law regarding the calculation of the attorney's fees award gives this Court nothing upon which to base our review." *See also* Syllabus Point 1, *Commonwealth Tire Co. v. Tri–State Tire Co.,* 156 W.Va. 351, 193 S.E.2d 544 (1972) ("Rule 52(a) mandatorily requires the trial court, in all actions tried upon the facts without a jury, to find the facts specially and state separately its conclusions of law thereon before the entry of judgment. The failure to do so constitutes neglect of duty on the part of the trial court,

and if it appears on appeal that the rule has not been complied with, the case may be remanded for compliance.").

Based on all the above, we find that the circuit court erred by awarding Michael T. attorney's fees and costs because Jean K. did not have an adequate opportunity to challenge whether such fees were incurred in the abuse and neglect proceedings and the reasonableness of the amount of fees sought. The circuit court abused its discretion by failing to make any findings of fact and conclusions of law in the final order with regard to the amount of fees awarded.[6] Accordingly, the final order of the circuit court is reversed with regard to the amount of attorney's fees awarded to Michael T., and this case is remanded to the circuit court to allow Jean K. the opportunity to present evidence concerning the reasonableness of the amount of attorney fees and costs submitted by Michael T. Because the circuit court presided over all the abuse and neglect proceedings, such evidence may be presented by written submission and oral arguments if desired by the parties. The circuit court should then enter an order that contains sufficient findings of fact and conclusions of law with regard to the attorney's fees and costs that are awarded.

In determining the appropriate amount of fees and costs to be awarded, the circuit court should be mindful of this Court's holding in Syllabus Point 4 of *Pitrolo* which provides that,

> Where attorney's fees are sought against a third party, the test of what should be considered a reasonable fee is determined not solely by the fee arrangement between the attorney and his client. The reasonableness of attorney's fees is generally based on broader factors such as: (1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the skill requisite to perform the legal service properly; (4) the preclusion of other employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the

---

**6.** The statement of legal fees incurred by Michael T. which was submitted to the circuit court by his counsel was simply attached to the final order.

client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the undesirability of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases.

In addition to considering the factors listed above, the court should carefully review the billing records submitted by Michael T. to ensure that the fees requested were generated as a result of this abuse and neglect proceeding. As discussed, Jean K. argues that some of the fees awarded to Michael T. resulted from legal services in connection with the parties' divorce as they concerned equitable distribution, custody, and child support. There appears to be some merit to her argument as Michael T. acknowledged in a footnote in his brief that one claimed fee may have involved equitable distribution issues arising out of the parties' divorce. Obviously, any fees and costs awarded should only pertain to this abuse and neglect proceeding.[7]

Also, as noted, Jean K. challenges the amount of attorney's fees granted because the DHHR advised the circuit court within two months of the filing of the abuse and neglect petition that it was not proceeding against Michael T. Jean K. argues that it was not necessary for Michael T. to participate in every stage of the abuse and neglect proceedings, and therefore, some of the legal fees he incurred were simply unnecessary. Michael T. responds, however, that his participation was required throughout the abuse and neglect proceedings because Jean K. was continuously making false accusations that he was sexually abusing Clare T. Upon remand, the circuit court should assess the extent to which it was necessary for Michael

T. to participate in the proceedings below and, if necessary, adjust the amount of fees awarded.[8]

## IV.

## CONCLUSION

Accordingly, for the reasons set forth above, the final order of the Circuit Court of Kanawha County entered on May 11, 2009, is affirmed, in part, and reversed, in part, and this case is remanded for further proceedings consistent with this opinion.

Affirmed, in part, reversed, in part, and remanded with directions.

DAVIS, Chief Justice, concurring:

With the majority's resolution of this case, I completely agree. I write separately to reiterate why the facts of this case, in particular, warrant an award of reasonable attorney's fees and to clarify the manner in which circuit courts should proceed upon a party's request for a hearing on a motion for an award of attorney's fees.

### I. Attorney's Fees are Warranted in this Case

As observed by the majority, an award of attorney's fees is clearly warranted under the facts of this case. This Court previously has held that "[t]here is authority in equity to award to the prevailing litigant his or her reasonable attorney's fees as 'costs,' without express statutory authorization, when the losing party has acted *in bad faith, vexatiously, wantonly or for oppressive reasons.*" Syl. pt. 3, *Sally–Mike Props. v. Yokum*, 179 W.Va. 48, 365 S.E.2d 246 (1986) (emphasis added).

Here, the record is replete with evidence demonstrating Jean K.'s ongoing quest to

---

7. Jean K. may wish to submit her own statement of legal fees so that the circuit court can review them along with the billing records of Michael T. to ensure that all fees awarded were generated as a result of the abuse and neglect proceeding only.

8. This is not to suggest that Michael T. should not have participated in the abuse and neglect proceedings. Furthermore, although the DHHR did not proceed against him, the petition against Michael T. was not dismissed until the adjudica-

tory order was entered on June 2, 2008. Jean K. contends, however, that Michael T. took on a prosecutorial role throughout the proceedings and incurred unnecessary legal fees. An evidentiary hearing on this particular issue is not necessary as the circuit court judge presided over the entire abuse and neglect proceeding and therefore, is able to determine the extent that it was necessary for Michael T. to participate in the proceedings and award reasonable attorney's fees and costs accordingly.

falsely and maliciously accuse her former husband of sexually abusing their youngest daughter in spite of the lack of any evidence indicating that he had, in fact, perpetrated such atrocities. In this regard, the circuit court, in its May 11, 2009, order, recounted various examples and consequences of Jean K.'s vexatious conduct:

> [A]fter this abuse and neglect Petition was filed [on March 23, 2007], and after the State chose not to proceed against the Father [Michael T.], the Respondent Mother [Jean K.] again falsely accused the father of sexually abusing [their daughter]....
>
> ....
>
> Father has incurred thousands of dollars of unnecessary attorneys' fees and costs in the above entitled proceeding because of Jean K[.]'s fraudulent allegations and her assertion of baseless and unfounded claims. Respondent Mother's conduct in this regard is hereby determined to have been vexatious and wanton. Respondent Mother's conduct herein has diverted attention from important issues concerning the welfare of these children, frustrated and delayed closure of this matter, and demonstrates an intent to occasioned [sic] oppress and harass the Respondent [Michael] T[.]
>
> Respondent Mother's conduct is the sole reason that this abuse and neglect proceeding was filed and is still pending. Respondent Mother has steadfastly refused to accept responsibility for her own conduct and her abuse of the children. Her defense has basically been to continue to accuse M[ichael] T[.]
>
> Respondent Mother's sexual abuse allegations against Respondent Father have all been previously determined by this Court, and the Family Court, to be unfounded, baseless and fraudulent. The entirety of Respondent Mother's allegations in this regard are without merit.

Respondent Mother's conduct has caused [Michael] T[.] to endure severe financial strain and continuous financial instability due [to] the incessant false accusations, court hearings, appeals, etc.... [Michael] T[.] has had to unnecessarily incur attorneys' fees and costs to defend himself and the well-being of his family.

> Respondent Mother has acted fraudulently, in bad faith, vexatiously, wantonly and for oppressive reasons before the institution of the above captioned matter and throughout these proceedings.

Also included in Jean K.'s course of oppressive conduct are no less than *two* domestic violence petitions and corresponding domestic violence protective orders setting forth Jean K.'s baseless allegations of Michael T.'s sexual abuse of their daughter, as well as Jean K.'s *three* prior appeals to this Court challenging the circuit court's findings that Michael T. was *not* responsible for their daughter's sexual abuse injuries—all three of which this Court *refused*.[1] Perhaps most troubling is that these false accusations of sexual abuse have languished in the court system for over three years! Because of Jean K.'s questionable motives and her unfathomable actions, both the parties' children and Michael T. have been prevented from finally putting this matter behind them and going forward with their lives. In short, the conduct exhibited by Jean K. during the course of the underlying abuse and neglect proceedings epitomizes the vexatious, bad faith, and oppressive conduct contemplated by this Court's *Sally–Mike* opinion so as to justify an award of attorney's fees and costs to Michael T.

## II. Amount of Attorney's Fees is Reasonable

Whether a specific award of attorney's fees is reasonable depends upon a consideration of numerous factors.

---

1. *See In the Matter of: John, Michael, Natalie & Clare T.*, No. 091302 (W.Va. Oct. 8, 2009); *In the Matter of: John T.; Michael T.; Natalie T.; Clare T.*, No. 090902 (W.Va. Oct. 8, 2009); *In the Matter of: John; Michael; Natalie; & Claire Marie T.*, No. 081815 (W.Va. Nov. 12, 2008). *See also State ex rel. Jean K[.] v. Paul Zakaib, Judge,* No. 33836 (W.Va. June 9, 2008) (dismissed upon Court's own motion following entry of order by circuit court); *In the Matter of: John T.; Michael T.; Natalie T.; Claire T.*, No. 090895 (W.Va. Oct. 8, 2009) (Jean K.'s petition appealing from child support order refused).

Where attorney's fees are sought against a third party, the test of what should be considered a reasonable fee is determined not solely by the fee arrangement between the attorney and his client. The reasonableness of attorney's fees is generally based on broader factors such as: (1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the skill requisite to perform the legal service properly; (4) the preclusion of other employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the undesirability of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases.

Syl. pt. 4, *Aetna Cas. & Sur. Co. v. Pitrolo*, 176 W.Va. 190, 342 S.E.2d 156 (1986).

In light of the facts of the case *sub judice* and the egregiousness of Jean K.'s conduct, the attorney's fees requested by Michael T., which range from $165 to $250 per hour are not, *per se*, unreasonable. *See Horkulic v. Galloway*, 222 W.Va. 450, 466, 665 S.E.2d 284, 300 (2008) (Davis, J., concurring) (observing that attorney's fees of $500 per hour were not *per se* unreasonable). Nevertheless, it is for the circuit court, not this Court, to resolve the question of reasonableness. *See* Syl. pt. 3, in part, *Bond v. Bond*, 144 W.Va. 478, 109 S.E.2d 16 (1959) ("[T]he trial [court] . . . is vested with a wide discretion in determining the amount of . . . court costs and counsel fees, and the trial [court's] . . . determination of such matters will not be disturbed upon appeal to this Court unless it clearly appears that [it] has abused [its] discretion."). Accordingly, I concur in the majority's decision to remand this case to the circuit court for such a determination.

### III. Hearing on Motion for Award of Attorney's Fees

Based upon the record of the lower court's proceedings, the majority has correctly decided to remand this case to the circuit court to permit the parties to present "evidence" regarding Michael T.'s request for costs and attorney's fees "by . . . oral arguments if desired by the parties." Even though a party against whom costs and attorney's fees are to be assessed has a due process right to notice and an opportunity to be heard thereon prior to their imposition,[2] it is imperative for a party to actively enforce his/her notice and hearing rights instead of sitting on his/her laurels and effectively waiving the process to which he/she is due. Although Jean K. responded to Michael T.'s motion for costs and attorney's fees, her response was not filed until one day before the scheduled hearing thereon. This dilatoriness comes dangerously close to a waiver of the due process rights to notice and a hearing on the issues of costs and attorney's fees. *See, e.g., In re Marriage of Jones*, 187 Ill.App.3d 206, 231, 134 Ill.Dec. 836, 853, 543 N.E.2d 119, 136 (1989) ("[A] party waives his right to a hearing on attorney's fees where he did not request a hearing before the trial court and is thereby left with the judge's ruling on the basis of the fee petition and affidavits alone."). Therefore, I would caution parties and their counsel in future cases to be ever diligent in their assertion of such rights and to be mindful of their duty to "speak clearly in the circuit court, on pain that, if they forget their lines, they will likely be bound forever to hold their peace." *Hanlon v. Logan County Bd. of Educ.*, 201 W.Va. 305, 315, 496 S.E.2d 447, 457 (1997) (internal quotations and citations omitted).

That said, it should be noted that the scope of the remand hearing on the reasonableness of the costs and attorney's fees awarded to Michael T. is not without limitation. Rather than permitting parties to conduct a mini-trial on the issues of costs and attorney's

**2.** *See, e.g., Czaja v. Czaja*, 208 W.Va. 62, 75–76, 537 S.E.2d 908, 921–22 (2000) ("In failing to accord Appellant's counsel an opportunity to respond to the lower court's basis for assessing fees and costs, the most basic of all protections inherent to our judicial system has been violated.");

*Daily Gazette Co. v. Canady*, 175 W.Va. 249, 251, 332 S.E.2d 262, 264 (1985) ("Like other sanctions, attorney's fees certainly should not be assessed lightly or without fair notice and an opportunity for a hearing on the record." (internal quotations and citation omitted)).

fees, with endless testimony and cross-examination of attorneys and expert witnesses, a circuit court conducting a costs and fees hearing should afford the parties an opportunity to orally present their arguments on the request for costs and fees and the reasonableness thereof and to submit, in writing, documentation of the costs and attorney's fees requested. Such a practice of narrowing the scope of a costs and fees hearing has been adopted by other jurisdictions in an attempt to prevent the relitigation of the case on its merits. *See, e.g., Pesaplastic, C.A. v. Cincinnati Milacron Co.,* 799 F.2d 1510, 1522 (11th Cir.1986) ("[D]ue process is afforded where ... the parties have an opportunity to present their arguments as to the propriety of sanctions, submit affidavits on the amount of such fees and costs, with an opportunity for the sanctioned party to file a motion challenging said affidavits." (citation omitted)); *In re Eliscu,* 139 B.R. 883, 886 (N.D.Ill.1992) (noting that "the requirements of due process as to notice and scope of hearing are based primarily upon the circumstances of the case" (citation omitted)); *Barnett v. Barnett,* 24 Kan.App.2d 342, 353, 945 P.2d 870, 878 (1997) (limiting scope of attorney's fees hearing). By contrast, a more extensive evidentiary hearing on the issues of costs and fees is permitted only where a case presents exceptional circumstances. *See, e.g.,* 750 Ill. Comp. Stat. Ann. 5/501(c–1)(1) (2010) ("Except for good cause shown, a proceeding for (or relating to) interim attorney's fees and costs in a pre-judgment dissolution proceeding shall be nonevidentiary and summary in nature."); *Hogan v. Hogan,* 58 Ill. App.3d 661, 668, 16 Ill.Dec. 265, 270, 374 N.E.2d 1040, 1045 (1978) ("While a hearing on the reasonable nature of attorney's fees is not necessary in every case, especially where the trial judge is familiar with the procedural history of the case, the party contesting the award is entitled to a hearing upon request." (citations omitted)). In the interest of preserving judicial economy, I believe the better practice is to generally limit the scope of a hearing addressing costs and fees while reserving more extensive costs and fees hearings for those extraordinary cases requiring further record development.

For the foregoing reasons, I respectfully concur in the majority's decision in this case.