## STATE OF WEST VIRGINIA
## SUPREME COURT OF APPEALS

**Andrea Roberts,**
**Plaintiff Below, Petitioner**

**FILED**

May 30, 2014

RORY L. PERRY II, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

**vs)  No. 13-0743** (Kanawha County 11-C-430)

**State Farm Mutual Automobile**
**Insurance Company,**
**Defendant Below, Respondent**

## MEMORANDUM DECISION

Petitioner Andrea Roberts, by counsel John J. Polak and Mark A. Atkinson, appeals an order of the Circuit Court of Kanawha County entered June 24, 2013, which granted summary judgment in favor of Respondent State Farm Mutual Automobile Insurance Company ("State Farm"). State Farm, by counsel Charles S. Piccirillo and Sabrena Olive Gillis, filed a response to which petitioner filed a reply.

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the circuit court's order is appropriate under Rule 21 of the Rules of Appellate Procedure.

### The Underlying Action

On December 13, 2007, petitioner was operating a 1996 Ford Explorer in Barboursville, Cabell County, West Virginia, when it was struck from behind by a vehicle owned by Thelma Hall and operated by Kitty Ann Alderson. The Hall vehicle was insured by Allstate Insurance Company and had a $50,000.00 liability policy. Driver Kitty Alderson had a policy issued by State Farm, with liability limits of $100,000.00 and which was excess liability coverage to the Allstate policy for the subject accident. Petitioner was the named insured under her own State Farm policy, which provided underinsured motor vehicle coverage limits of $100,000.00 per person and $300,000.00 per occurrence, as well as medical payment coverage (also referred to as "MPC") limits of $25,000.00.

Petitioner presented an MPC claim to State Farm under her own policy. As it began making MPC payments under this coverage, State Farm also initiated contact with Allstate. By letter dated September 4, 2008, State Farm provided Allstate with "notice of [State Farm's] subrogation lien and interest in this matter," and also requested that Allstate "should address our subrogation interest prior to executing any settlement. In the event that a settlement is made

1

without first addressing our subrogation rights, your company will be responsible for the medical expense payments, which we made pursuant to *Nationwide v. Dairyland*, 445 S.E.2d 184 (W.Va. 1994)." Meanwhile, on September 23, 2009, petitioner filed a civil action against Alderson (the driver of the vehicle that struck petitioner's vehicle) in the Circuit Court of Cabell County for bodily injury received in the accident. Pursuant to its insurance agreement with Hall (the owner of the vehicle Alderson was driving), Allstate provided a defense for Alderson.

It is undisputed that under petitioner's policy with State Farm, State Farm had a contractual right to subrogation for MPC payments made under the policy. In October of 2009, given that the two-year statute of limitations on petitioner's personal injury claim was about to expire and that petitioner did not inform State Farm that she had already protected State Farm's contractual subrogation rights by filing a civil action, State Farm submitted a medical payment subrogation claim against Allstate to inter-company arbitration seeking $18,097.70 in medical payments it had paid on petitioner's behalf.[1]

On December 1, 2009, State Farm received an arbitration award of $18,097.70 from the Arbitration Forum. Allstate subsequently advised State Farm that it would honor the award upon settlement of petitioner's personal injury claim. However, on or about March 16, 2010, with the assistance of the Arbitration Forum, State Farm collected a $18,097.70 check from Allstate that was made payable to "State Farm Mutual Auto Insurance, as a subrogee of Andrea Roberts, and Mark Atkinson Esq. her attorney." State Farm failed to advise either petitioner or her counsel that the arbitration award had been received and cashed the check.

On July 19, 2010, in connection with petitioner's MPC claim and pursuant to the terms of petitioner's State Farm policy, a State Farm claims representative requested that petitioner submit to an independent medical examination ("IME"). The stated reason was that petitioner had no contact with State Farm from March 2009 until April 2010, when she was prescribed a TENS unit, and that a June of 2010 doctor's note stated that petitioner injured her back in a fall months after the subject car accident. It is undisputed that petitioner refused to attend the IME.

In October of 2010, State Farm Claims Representative Debbie Clem learned that Allstate previously paid State Farm $18,097.90 in subrogation and that approximately $31,000.00 in liability coverage was still available. On or about November 30, 2010, Clem returned the subrogation arbitration award to Allstate and, shortly thereafter, advised petitioner's attorney of the refund.

On December 2, 2010, Allstate (on behalf of Alderson) offered petitioner the Allstate policy limits of $50,000.00, contingent upon State Farm's agreement to waive its MPC subrogation claim. State Farm refused to waive subrogation, contending that only $6,000.00 of petitioner's medical bills arguably related to the subject accident. Petitioner and Alderson

---

[1]Petitioner represents that, prior to filing its subrogation claim, State Farm failed to make any attempt to contact her to inquire as to whether she intended to file or had filed a lawsuit in her own name. For its part, State Farm contends that when it notified petitioner of its subrogation interests in December of 2008, petitioner failed to respond; failed to inform State Farm that she intended to file suit; and further failed to inform it that she subsequently did file suit.

eventually settled the underlying personal injury action in January of 2011. Under the terms of the settlement agreement, petitioner received the entire limits of liability under Hall's Allstate policy ($50,000.00) and also received $10,000.00 from Alderson's State Farm policy, which was a $100,000.00 excess liability policy. State Farm subsequently reduced its MPC subrogation claim of $19,276.75 to $6,000.00, which was then further reduced by a one-third attorney's fee, to $4,000.00.

## The Present Action

On March 16, 2011, Petitioner filed the present action in the Circuit Court of Kanawha County against State Farm, State Farm Claims Representative Clem, and another claims representative, Joan Schwartz.[2] Petitioner alleged claims of breach of contract, unfair claims settlement practices, and bad faith, all arising from State Farm's handling of petitioner's claim for MPC benefits. The complaint essentially challenges State Farm's efforts to exercise its right of subrogation of medical payment benefits prior to petitioner being "made whole" for her damages suffered as a result of the subject accident. More specifically, petitioner challenges State Farm's attempt to directly pursue subrogation through arbitration and its subsequent refusal to waive its subrogation rights when petitioner was seeking to recover the Allstate liability coverage in the underlying personal injury lawsuit.

A Scheduling Order was entered on May 15, 2012, providing for a June 3, 2013, trial date; a discovery cut-off date of March 15, 2013; and a deadline for the filing of dispositive motions on April 5, 2013. In accordance therewith, State Farm filed a motion for summary judgment on April 5, 2013. Almost three weeks later, on April 25, 2013, petitioner served a Rule 30(b)(7) deposition notice upon State Farm. On April 29, 2013, petitioner filed a motion to continue the trial and for an extension of the time frames in which to complete pre-trial discovery. As grounds for her motion, petitioner stated that "the parties have experienced scheduling difficulties and delays in completing the fact discovery necessary for the development of the case" and that "because fact discovery has not been completed, the party's expert witnesses have not been able to render their final opinions in this case, nor have the parties been able to depose the experts about their opinions." Thereafter, on May 14, 2013, petitioner filed her response in opposition to State Farm's motion for summary judgment.

In an order entered June 24, 2013, following a hearing on the motion, the circuit court granted State Farm's motion for summary judgment.[3] This appeal followed.

Pursuant to Rule 56(c) of the West Virginia Rules of Civil Procedure, summary judgment should be awarded "if the pleadings, depositions, answers to interrogatories, and admissions on

---

[2]Deposition testimony of Defendants Schwartz and Clem subsequently revealed that they were neither involved in nor had personal knowledge of State Farm's decision to try to enforce its subrogation rights against Allstate via arbitration.

[3]It appears that, on July 16, 2013, well after the circuit court entered its June 24, 2013, order granting summary judgment in favor of State Farm and dismissing the matter, with prejudice, the circuit court inadvertently entered an order granting petitioner's motion to continue the trial date and to extend the discovery time line.

file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Thus, "'[a] motion for summary judgment should be granted only when it is clear that there is no genuine issue of fact to be tried and inquiry concerning the facts is not desirable to clarify the application of the law.' Syl. pt. 3, *Aetna Cas. & Sur. Co. v. Fed. Ins. Co. of New York*, 148 W.Va. 160, 133 S.E.2d 770 (1963)." Syl. Pt. 1, *McComas v. ACF Industries, LLC*, 232 W.Va. 19, 750 S.E.2d 235 (2013). We accord a plenary review to the circuit court's order granting summary judgment: "[a] circuit court's entry of summary judgment is reviewed *de novo.*" Syl. Pt. 1, Painter v. Peavy, 192 W.Va. 189, 451 S.E.2d 755 (1994). We note, as well, that "the party opposing summary judgment must satisfy the burden of proof by offering more than a mere 'scintilla of evidence' and must produce evidence sufficient for a reasonable jury to find in a nonmoving party's favor. *Anderson [v. Liberty Lobby, Inc.]*, 477 U.S. [242] at 252, 106 S.Ct. [2505] at 2512, 91 L.Ed.2d [202] at 214 [1986]." *Williams v. Precision Coil, Inc.*, 194 W.Va. 52, 60, 459 S.E.2d 329, 337 (1995).

Petitioner's first assignment of error is that the circuit court erred in granting State Farm's motion for summary judgment before discovery was completed. *See Payne's Hardware & Bldg. Supply, Inc. v. Apple Valley Trading Co.*, 200 W.Va. 685, 690, 490 S.E.2d 772, 777 (1997) (quoting *Celotex Corp. v. Catrett*, 477 U.S.317, 322 (1986)) (stating that "[s]ummary judgment is appropriate only after the non-moving party has enjoyed 'adequate time for discovery.'"). As noted above, State Farm filed its motion for summary judgment on April 5, 2013, which was the deadline for the filing of dispositive motions as set forth by the scheduling order. Approximately three weeks later, petitioner moved to continue the trial and to extend the discovery time line and also served State Farm with a notice of video deposition of the company's representatives, pursuant to Rule 30(b)(7) of the West Virginia Rules of Civil Procedure. In Syllabus Point 1 of *Powderidge Unit Owners Ass'n v. Highland Properties, Ltd.*, 196 W.Va. 692, 474 S.E.2d 872 (1996), this Court held as follows:

> An opponent of a summary judgment motion requesting a continuance for further discovery need not follow the exact letter of Rule 56(f) of the West Virginia Rules of Civil Procedure in order to obtain it. When a departure from the rule occurs, it should be made in written form and in a timely manner. The statement must be made, if not by affidavit, in some authoritative manner by the party under penalty of perjury or by written representations of counsel. At a minimum, the party making an informal Rule 56(f) motion must satisfy four requirements. It should (1) articulate some plausible basis for the party's belief that specified "discoverable" material facts likely exist which have not yet become accessible to the party; (2) demonstrate some realistic prospect that the material facts can be obtained within a reasonable additional time period; (3) demonstrate that the material facts will, if obtained, suffice to engender an issue both genuine and material; and (4) demonstrate good cause for failure to have conducted the discovery earlier.

On appeal, petitioner generally argues that her motion to continue the trial and to extend the time lines for the completion of discovery satisfied the informal requirements of *Powderidge*. We disagree. Petitioner's brief fails to articulate any basis for the belief that "specified 'discoverable' material fact" exists and further fails to demonstrate that "material facts can be

4

obtained within a reasonable additional time period." *Id.* Furthermore, petitioner fails to demonstrate (or even argue) that newly-obtained material facts will suffice to produce a genuine and material issue and also fails to show "good cause for failure to have conducted the discovery earlier." *Id.* Given that petitioner has failed to satisfy even the minimal requirements of *Powderidge*, this Court concludes that the circuit court did not err in considering State Farm's timely motion for summary judgment.

Petitioner's second assignment of error is that the circuit court erred in granting State Farm's motion for summary judgment because the existing record contained sufficient evidence to deny the motion and further erred in misapplying the "made whole" rule to this case. This Court has held

> [w]hen applying the made whole doctrine it is incumbent on the circuit court to consider: 1) the ability of parties to prove liability; 2) the comparative fault of all parties involved in the accident; 3) the complexity of the legal and medical issues; 4) future medical expenses; 5) nature of injuries; and 6) the assets or lack of assets available above and beyond the insurance policy.

Syl. Pt. 3, *Provident Life & Acc. Ins. Co. v. Bennett*, 199 W.Va. 236, 483 S.E.2d 819 (1997). Petitioner argues that there are genuine issues of material fact as to whether State Farm effectuated the ultimate settlement of her medical payments claim (including the handling of State Farm's subrogation rights) in a fair and equitable manner. In support thereof, petitioner argues that State Farm's subrogation rights did not arise in this case until petitioner was made whole for her injuries or losses sustained in the accident,[4] and further, that although the subrogation provision in petitioner's State Farm policy gives State Farm the right to take legal action against a tortfeasor in the insured's name to recover payments made, the policy does not give State Farm the right to take legal action in its own name to recover payments. Petitioner contends that State Farm attempted to directly exercise its subrogation rights by filing an arbitration proceeding against Allstate before petitioner was made whole and by seeking to collect the arbitration award directly from Allstate even though State Farm knew its rights were being protected given that petitioner had filed her own lawsuit against Allstate's insured. Finally, petitioner argues that a jury could have reasonably concluded that State Farm did not act fairly or equitably within the meaning of West Virginia Code § 33-11-4(9)(f) (2002)[5] when it refused to

---

[4]*See* Syl. Pt. 3, *Kanawha Valley Radiologists Inc. v. One Valley Bank, N.A.*, 210 W.Va. 223, 557 S.E.2d 277 (2001) (holding that "[u]nder general principles of equity, in the absence of statutory law or valid contractual obligations to the contrary, an insured must be fully compensated for injuries or losses sustained (made whole) before the subrogation rights of an insurance carrier arise.").

[5]West Virginia Code § 33-11-4(9)(f) provides as follows:

> The following are defined as unfair methods of competition and unfair or deceptive acts or practices in the business of insurance:
> . . . .

5

waive subrogation and argued that the $50,000.00 liability limits offered by Allstate would make petitioner whole because only $6,000.00 of petitioner's medical bills were arguably related to the automobile accident.

As indicated above, it is undisputed that State Farm had a contractual right of subrogation to recover medical payments made under petitioner's policy. It is further undisputed that this right was subject only to petitioner's right to be made whole. *See Kanawha Valley Radiologists Inc.,* 210 W.Va. at 224, 557 S.E.2d at 278, syl. pt. 3. A total of $150,000.00 in liability coverage was available to compensate petitioner for her injuries. Petitioner voluntarily entered into a settlement whereby she was paid $50,000.00, the limits of liability under the Allstate policy, plus $10,000.00 from the State Farm policy of the driver (Alderson), which had limits of liability of $100,000.00. Under the limited facts of this case, we agree with the circuit court that "no reasonable fact-finder could find [Petitioner] was not made whole."

Furthermore, the record reveals that State Farm submitted a medical payment subrogation claim to inter-company arbitration approximately two months before the expiration of the statute of limitations. State Farm's efforts were intended to protect its subrogation rights given that petitioner had not informed State Farm that she had filed suit. Indeed, when State Farm first notified petitioner of its subrogation interests in December of 2008, petitioner neither responded nor advised State Farm that she even intended to file suit. Importantly, State Farm's actions in no way prevented petitioner from being made whole nor did it otherwise prejudice her claim. When State Farm's claim representative learned the arbitration award had been paid prior to petitioner settling her personal injury claim, State Farm reimbursed Allstate in full. Thus, the full limits of liability under the Allstate policy ($50,000.00) were available to petitioner and, in fact, were paid to her in settlement of her claim. Moreover, as previously noted, State Farm requested that petitioner undergo an IME to determine whether all of petitioner's medical payments were related to the underlying automobile accident.[6] Even though State Farm had a contractual right under the policy to make such a request, petitioner refused to comply. Nonetheless, State Farm paid all of petitioner's medical bills (totaling $19,276.75). Shortly after Allstate offered its policy's full limits of liability, State Farm reduced its subrogation claim by approximately two-thirds, to $4,000.00. Based upon the foregoing, this Court concludes that the circuit court committed no error in granting summary judgment in favor of State Farm.

For the foregoing reasons, we affirm.

---

(9) Unfair claim settlement practices.—No person shall commit or perform with such frequency as to indicate a general business practice any of the following:

. . . .

(f) Not attempting in good faith to effectuate prompt, fair and equitable settlements of claims in which liability has become reasonably clear[.]

[6]As noted above, State Farm requested the IME because petitioner had no contact with it for almost one full year (from March 2009 until April 2010, when petitioner was prescribed a TENS unit) and because a June of 2010 doctor's note indicated that petitioner injured her back in a fall months after the subject car accident.

Affirmed.

**ISSUED:** May 30, 2014

**CONCURRED IN BY:**

Justice Brent D. Benjamin
Justice Margaret L. Workman
Justice Menis E. Ketchum
Justice Allen H. Loughry II

**DISSENTING:**

Chief Justice Robin Jean Davis